**PERRINE et al. v. BURDICK et al.**

**No. 12498.**

Circuit Court of Appeals, Eighth Circuit.

Nov. 26, 1943.

F. A. Whiteley, of Minneapolis, Minn., for appellants.

Otis A. Earl, of Kalamazoo, Mich. (Williamson & Williamson, of Minneapolis, Minn., Earl & Chappell, of Kalamazoo, Mich., and George F. Williamson and Ralph E. Williamson, both of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree of accounting for profit resulting from infringement of a patent. Appellants had judgment, but they claim it was insufficient in amount.

The patent involved is No. 1,896,369, issued to appellant Emmett Burgess Per-

rine and by him assigned to appellant Perrine Manufacturing Company, and involves improvements in an automatic spring-winding fishing reel. Appellee Shakespeare Company is the assignee of patent No. 1,882,771, issued to appellee Frank Burdick, and of patent No. 1,903,559, issued to William Shakespeare. Patent No. 1,903,559 was before this court on appeal by the Shakespeare Company, the decision being reported as Shakespeare Company v. Perrine Manufacturing Company, 91 F.2d 199. Patent No. 1,882,771, known in the record as the Burdick Patent, was also considered by this court in Burdick v. Perrine, 91 F.2d 203. That action was commenced by Shakespeare Company and Frank Burdick to obtain a decree as to the validity of the Burdick patent and to require a reissue of the patent. The defendants Perrine and the Perrine Manufacturing Company counterclaimed, charging that the Burdick patent infringed the Perrine patent No. 1,896,369. In that litigation it was held that certain claims of the Burdick patent were infringements of the Perrine patent, and an interlocutory decree was entered, directing an accounting. Following the affirmance of that decree by this court, an accounting was had, resulting in the decree from which this appeal is prosecuted. A master was appointed who found the profits to be $21,541.72. Of this amount the master apportioned 40 per cent to the appellant Perrine Manufacturing Company. The trial court modified the master's report by increasing the apportionment of profits to the Perrine Manufacturing Company to 50 per cent. To avoid confusion we shall hereafter refer to appellant as the Perrine Company and to the appellee as the Shakespeare Company.

As already observed, the Perrine Company contends that the amount awarded as damages was inadequate. This inadequacy of damages resulted substantially from four alleged errors: (1) The use of the so-called standard cost system or formula, instead of the actual cost; (2) in not awarding the Perrine Company the entire profits arising from the production and sale of the accused reel, instead of only 50 per cent of such profits; (3) failure of the court to award the Perrine Company interest from the end of 1937 to the end of the infringement period; (4) failure to assess against the Shakespeare Company the entire cost of the accounting.

There are other contentions which we think are incidental to these, or purely procedural in character.

The Shakespeare Company owns and operates a large plant in Kalamazoo, Michigan, in which it manufactures fishing tackle, and the manufacture of the infringing reels was but a comparatively small part of its business. These reels were manufactured in the plant with the same machinery, from the same class of materials, by the same workmen, and under the same supervision as its other products.

The Shakespeare Company employed the standard cost system of accounting, and the master and the court accepted it as the basis for computing the cost of producing the infringing product. The ultimate object of an accounting such as this is to determine what profit the infringer has made by use of the infringing device. Duplate Corp. v. Triplex Co., 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274. Obviously the method most likely to produce that result is the one that should be adopted. The Shakespeare Company had employed the standard cost accounting system several years before the infringement involved in the instant case began. Under this system the cost is determined in advance. At the commencement of the fiscal year the amount of merchandise to be manufactured is ascertained; a survey is taken of the records and experience of the preceding year; the material and labor costs and the manufacturing burden are computed and set up on the books for the current fiscal year, and at the end of each year the books are audited independently of the standard cost system. Such audit involves the checking and ascertainment of all disbursements and items of expense. Materials and merchandise on hand are checked and losses from shrinkage and theft are compiled. In making up the inventory the merchandise and material are priced at cost or market, whichever is lower. Then after the completion of the audit the computations of the actual cost are checked with the standard cost and adjustments are made, either favorable or unfavorable to the standard cost system. The purpose is to obtain at the end of the year the actual cost of the goods manufactured, and after adjustments are made the books should reflect the actual cost of doing

business and the profit or loss sustained. It is therefore not accurate to say that the system is based upon estimates. The amount of material required for a product is determined by the engineering department and checked with the actual material used in runs made in the factory. The result is a determination first as an engineering forecast and then as an actual working proposition under actual working conditions. The labor cost is the standard rate actually paid as determined by actual working operations. The burden is also determined in a similar manner. The system has been in use for many years and has the approbation and endorsement of expert accountants, at least two of whom testified that they found the records and accounts of the Shakespeare Company to be well kept.

■ As an incident to the contention that the standard cost accounting system, based upon the Shakespeare Company's records, should not have been accepted, it is urged that the Shakespeare Company failed to keep separate and accurate records of all the infringing acts and that this entitled the Perrine Company to have all doubts resolved against the Shakespeare Company. Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 279 F. 648. The Shakespeare Company in fact kept its accounts in the usual method in vogue with that company. The trial court, in its discretion, having under the circumstances disclosed by the record, declined to follow the rule invoked by Perrine, we are not disposed to disturb the decision on this ground. But it is contended that facts appear in the record which lead to the inevitable conclusion that profits have been computed at too low a figure and that the calculation of profits has been based upon theory or estimate, even when the actual facts were shown.

In the manufacture of products of this character there are three elements of costs: (1) material, (2) labor, and (3) burden, which includes all the other manufacturing expenses except labor and material. To the allowance made for each of these elements the Perrine Company makes strenuous objections.

The Perrine Company contends that the actual figures of cost of material obtained from the records of the Shakespeare Company are lower than the figures resulting from the use of the standard cost accounting system by $4,942.78, which higher figures were used by the master and the trial court. The court in effect found that the higher figures should be used because supported by the standard cost system and found irregularities in the mathematical computations and in copying in the Perrine statement showing the lower figures, and that the Perrine Company in its computations had not considered freight charges, had failed to make allowances for shrinkage, theft or loss of material and had made no adjustment in inventory at the close of the fiscal year; that the Shakespeare Company figured cost on a fiscal, while the Perrine accountant had used a calendar year basis. The court found as a fact that: "Figures presented by Perrine Co. showing cost of materials less by the sum of $4,216.18 than that reported by Shakespeare Co. do not take into consideration essential factors covered by the standard cost system employed by Shakespeare Co. and the Shakespeare Co's. figures as to the cost of material must be accepted as correct."

■ Proof with reference to the records as kept by the Shakespeare Company pursuant to the so-called standard cost accounting system was, under the evidence, presumptively correct. The figures and accounts produced by the Perrine Company manifestly omitted material factors and the matter of computing the cost of material by calendar years instead of fiscal years leads into serious difficulty. The 1933 fiscal year of the Shakespeare Company would cover a period from August 1, 1932, to July 31, 1933, while the calendar year, of course, for 1933 began January 1, 1933. The record, Exhibit 182, shows the so-called actual cost figures as presented by the Perrine Company, and it appears therefrom that the prices covered the period from January 1, 1933, to January 1, 1938. Stark, an accountant for the Perrine Company, said it covered from "1932 to 1937, inclusive." The fiscal year of 1937 would end July 31, 1937. The court found that, "No reels were manufactured after July 31, 1937 but sales were made to and including the first months of 1938." Inventory adjustments were not made to establish loss or gain at yearly or other intervals. From these considerations we conclude that the trial court properly declined to adopt the figures submitted by the Perrine Company purporting to show the actual cost of material.

It is next objected that the labor cost for the period from February 7, 1933, to July 31, 1934, is incorrect. Actual labor costs, except as reflected by the standard cost system, are not shown by the Shakespeare Company's books or records for that period as the labor time tickets had been destroyed and accountants were therefore unable to compute the amount actually paid for labor employed in making the infringing reels during that period. It is insisted by the Perrine Company that the labor costs shown by the Shakespeare Company's books for the years covering the production of the infringing article were excessive. This claim is based upon the fact that following the years 1933 and 1934 the labor cost was very materially less. Its argument is based upon the assumption that because labor costs in subsequent years were generally lower than labor costs for 1933 and 1934, it was warranted in adopting the month of July, 1934, as a more accurate basis for computation for the labor costs during the infringing period. In support of this argument the Perrine Company refers to the testimony of the accountant Bertch who testified that, "I do know that in 1932 and 1933, during the depth of the depression, labor was not being paid very high rates then in many industries." An auditor for the Shakespeare Company testified that since 1934, "the actual amount paid for an hour's work has, in general, been increasing; it has at our plant." But it is observed that on cross-examination the witness further testified as follows: "Costs were declining, as the years went on, through this accounting period. On about November 1, 1933, we employed a firm of industrial engineers with the result that changes in our incentive wage system, close surveillance of our burden expenditures * * * we have actually, in my opinion achieved those economies. The cost of identical materials in most cases was higher and the cost of labor per hour was higher; however, during the 1937 period we have operated from sixteen to twenty-four hours a day and in the 1933 period I doubt if I would be exaggerating it if I said we were operating six hours a day, with a result that *our fixed charges were a much lower percentage of our cost; our improved operations reduced the direct labor cost of a given item."* (Italics Supplied).

There was also testimony as to the effect of the incentive wage system upon labor cost. The master, who heard the testimony and who was confronted by the witnesses, made findings, and the court upon consideration of the exceptions filed approved these findings. These we should not disturb unless clearly erroneous or not based upon substantial evidence. An examination of the record on this question convinces that the findings are supported by the evidence. The trial court, in its opinion, among other things said: "Whether methods of efficiency adopted by Shakespeare Company in later years explain the entire decrease in labor costs, which presumably made its appearance at or about July, 1934, need not be determined. There is, however, no satisfactory evidence that the labor costs for 1933 and 1934 are padded or fraudulent or that they reflect anything but the actual labor outlay. There are no circumstances in the record which justify the arbitrary computation of labor costs which was compiled by Perrine's accountant." We concur in this view.

The Perrine Company makes strenuous objections to the use of the figures shown by the Shakespeare Company's accountants relative to burden or manufacturing overhead. In apportioning the share of burden to the manufacture of a given article, the ratio of the total burden in each department to the amount of direct labor in all manufacturing operations in that department is computed. These are referred to as burden rates and generally in manufacturing operations they amount to more than the labor directly employed on the article. The burden charged against the article in dollars and cents is determined by multiplying the direct cost of labor by the burden percentage. The sum of the items of direct labor, material and burden makes up the manufacturing cost of the article. In computing the burden or manufacturing overhead, the Shakespeare Company followed the standard cost system with estimated burden rates adjusted at the end of the year by variance figures up or down as actual experience during the fiscal year disclosed. In determining burden the labor cost must be ascertained and if that element is incorrectly determined the resulting percentage must necessarily be erroneous. In calculating the burden, Perrine Company used the labor costs,

which the lower court found to be incorrect and which we have already declined to follow. The master and the trial court, after a very full hearing, decided that the standard cost system as employed by the Shakespeare Company fairly and correctly determined the burden which should be added to the cost of sales. We are of the view that this finding is supported by ample evidence and is therefore sustained.

The Perrine Company insists that there should be no apportionment of profits arising from the production of the infringing article. Claim 10 of the Perrine patent reads as follows: "In a fishing reel, the combination of a support adapted to be attached to a fishing rod, a rotary spring drum for the fishline mounted on said support, a brake pivotally mounted to move in a single plane only and normally exerting a braking pressure in said direction to wind the line thereon, the braking surface of said brake being accentric with relation to its pivotal point whereby the braking pressure is reduced as the line is drawn out, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum."

The trial court, in refusing to recognize Perrine Company's right to recover profits for an article patented as an entirety, said: "The contribution made by Perrine was his concept of an improved brake member which he adapted to the automatic reel so that when the line is drawn out, the brake is automatically reduced, or its pressure so reduced that the line is readily and freely withdrawn. To contend that Perrine is the inventor of anything more is a refusal to recognize the uncontradicted factual situation which is presented herein. The automatic reel had long been on the market. The rotary spring was old. The manual lever for releasing the spring device in order to wind the line had long been in use. Various types of reels for fly fishing had long been in use."

■ For profits arising from the infringement of an article patented as an entirety, the infringer is liable for all profits unless he can show that a portion of them is the result of some other element employed by him. Westinghouse Electric & Mfg. Co. v. Wagner, 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653; Dowagiac Mfg. Co. v. Minnesota-Moline Plow Co., 235 U.S. 641, 35 S.Ct.

221, 59 L.Ed. 398; Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825. In an infringement case the actual invention as compared with the prior art is important rather than the terms used in describing it. An improvement of an existing structure does not constitute an invention of a complete new structure. Egry Register Co. v. Standard Register Co., 6 Cir., 23 F.2d 438. Manifestly, this is a case involving an improvement only on the prior art. The Shakespeare Company offered evidence that the percentage to be allowed was 20 per cent. The master allowed 40 per cent and the trial court allowed 50 per cent of the resulting profits. The burden on this issue rested on the Perrine Company. We think the apportionment made by the trial court is sustained by a preponderance of the evidence.

■ Interest was allowed from the time of the filing of the report of the master. As the profits had to be apportioned, the damages were not liquidated before that time. Generally, interest will be awarded from the time of the filing of the master's report. Duplate Corp. v. Triplex Co., 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274; Reynolds Spring Co. v. L. A. Young Industries, 6 Cir., 101 F.2d 257. There is no merit in the Perrine Company's contention on this question.

■ At the request of both parties, the master made a recommendation as to the apportionment of costs between them. He recommended that the Perrine Company pay one-fourth of the costs and that the Shakespeare Company pay three-fourths. Perrine Company, however, insists that Shakespeare Company should be required to pay all the costs. The assessment of costs was within the sound judicial discretion of the trial court and its decision should not be reversed unless that discretion has clearly been abused. Van Kannel Revolving Door Co. v. Uhrich, 8 Cir., 297 F. 363; H. H. Robertson Co. v. Klauer Mfg. Co., 8 Cir., 98 F.2d 150.

■ We pretermit any discussion of the details embodied in the charges and counter-charges with reference to the responsibility of the parties for the prolonging of the accounting period. We have examined the record and are satisfied with the decision of the trial court in this regard.

We have considered other contentions urged by the Perrine Company but are of the view that they are without merit.

The decree appealed from is therefore affirmed.