## CLAIR et al. v. KASTAR, Inc.

District Court, S. D. New York.
Dec. 23, 1946.

See also D.C. 58 F.Supp. 378.

Munn, Liddy & Glaccum, of New York City (John H. Glaccum, of New York City, and C. W. Prince, of Kansas City, Mo., of counsel), for plaintiff.

Lackenbach & Hirschman, of New York City (Armand E. Lackenbach, of New York City, of counsel), for defendant.

CAFFEY, District Judge.

In this action an interlocutory judgment was entered June 28, 1945, holding that defendant had infringed claim 2 of U. S. Letters Patent, No. 1,577,821, issued to William P. Campbell, under date of March 23, 1926, by the manufacture, sale and use of automobile steering stabilizers, i. e., devices intended to prevent wobbling or shimmying of the front wheels in automobiles, designated by defendant as its models 73 and 74. The judgment directed that plaintiffs recover from defendant, for the period of December 30, 1936, to March 23, 1943, all the profits, gains and advantages which it had derived, received, earned or made, and all damages which plaintiffs had sustained, by reason of the infringements.

A Special Master was appointed to take and state an account of such profits, gains, advantages and damages and to report thereon. He was also directed to receive evidence indicating the presence or absence of conscious and deliberate infringement, to make findings thereon and to report the same.

In February, 1946, before the Master had begun the taking of testimony, defendant moved to amend the judgment by limiting the period of the accounting to the period from December 1, 1941, to March 23, 1943, or, in the alternative, to the period from February 18, 1941, to March 23, 1943. On March 22, 1946, an order was entered denying the motion, without prejudice to the right of defendant, on the coming in of the Master's report, to claim that the proper period of the accounting was either from January 26, 1942, to March 23, 1943, or from February 18, 1941, to March 23, 1943, and directing the Master to take and state the account for the period set forth in the judgment; also for each of the two other periods, separately.

The Master filed his report on September 19, 1946. Plaintiffs now move to confirm it with three exceptions. Defendant has filed twelve exceptions to the report and moves to limit the accounting period to one of the two periods claimed by it to be the proper accounting period.

Plaintiffs' exceptions will be considered first. They are that the Master erred in (1) allowing, as an item of indirect costs and general overhead, the monies drawn by the owners of defendant as salaries, (2) charging losses sustained in 1938 and 1939 of $288.07 and $57.37, respectively, against the total net profits on model 73 for the accounting period, and (3) not finding defendant's infringement to be conscious and deliberate and awarding plaintiffs damages accordingly.

*Should salaries have been allowed as a deduction?*

Defendant was incorporated in 1929. It is engaged in manufacturing and selling automobile specialties throughout the United States. The officers and directors are, and have been, Samuel Kaplan, who is the president, Louis Stark, who is the secretary and treasurer, and Miss Sundell, who is the office manager. She owns only nominal shares, the rest being owned equally by Kaplan and Stark, who are the only high

salaried officers, and who do all of the work in connection with defendant's merchandising.

In accordance with the Master's direction, various statements of defendant's business, prepared by Michael Rosen, its accountant for ten years, were received. Plaintiffs stipulated that they did not question the accuracy of the figures or the propriety of the method of calculating profits, but objected only to the inclusion of certain items therein.

In calculating the net profits there were deducted all payments for legal fees in connection with suits involving infringements by models 73 and 74 and payments made on account of judgments obtained by plaintiffs for infringements against Montgomery Ward & Co. and Sears Roebuck & Co., customers of defendant. These statements show the following facts which, for the sake of greater clearness, will be reduced to tabular form.

| Year | Officers Salaries Paid | Gross Business, i. e. Net Sales | Net Profits Before Income Taxes |
|---|---|---|---|
| 1937 | $ 26,000 | $ 412,260.27 | $ 20,447.77 |
| 1938 | 26,200 | 444,611.53 | 20,892.06 |
| 1939 | 31,000 | 560,131.91 | 23,711.41 |
| 1940 | 41,600 | 610,927.71 | 30,138.87 |
| 1941 | 52,000 | 914,224.04 | 67,134.85 |
| 1942 | 53,000 | 558,697.82 | 29,207.45 |
| 1943 | 52,000 | 339,203.26 | 13,073.92 |
| Totals | $281,800 | $3,840,056.44 | $204,606.33 |

No dividends have been paid, except one of $7,500 in 1937, which appears to have been a stock dividend, for the capital stock outstanding was increased in that year from $62,500 to $70,000. Defendant's total assets increased from $130,007.39 on December 31, 1936, to $228,391.37 on December 31, 1943, its liabilities, exclusive of capital stock and surplus, from $52,133.10 to $19,368.15 and its surplus from $15,374.29 to $139,023.22.

In calculating defendant's profits on its sales of models 73 and 74, the accountant took the total net sales of all goods in each year and divided that figure into the total operating expenses for selling, shipping, general and administrative purposes, which included the salaries paid to Kaplan and

Stark, and thus arrived at the percentage which such overhead operating expenses bore to all defendant's sales. He then took the total sales of each model in each year and deducted the cost of the models and the overhead operating expenses, calculated upon the total sales at the percentages so determined, and thus arrived at the net profits on each model from 1937 to April 1, 1943. With reference to model 73, the results were as follows:

| Year | Number of Units Sold | Total Sales | Net Profits |
|---|---|---|---|
| 1937 | 46,115 | $ 7,340.00 | $130.14 |
| 1938 | 30,322 | 4,828.56 | 288.07 Loss |
| 1939 | 25,715 | 4,098.08 | 57.37 Loss |
| 1940 | 20,706 | 3,682.56 | 187.07 |
| 1941 | 20,601 | 3,952.43 | 560.71 |
| 1942 | 10,933 | 2,447.07 | 276.29 |
| 1943 to April 1 | 1,484 | 341.32 | 19.88 |
| Totals | 155,876 | $26,690.02 | $828.65 |

With reference to model 74, the results were as follows:

| Year | Number of Units Sold | Total Sales | Net Profits |
|---|---|---|---|
| 1937 | 127,675 | $ 31,811.62 | $ 3,048.52 |
| 1938 | 137,648 | 33,788.32 | 2,888.02 |
| 1939 | 130,371 | 32,353.88 | 4,599.93 |
| 1940 | 111,572 | 27,571.04 | 3,565.25 |
| 1941 | 112,111 | 29,943.68 | 5,865.61 |
| 1942 | 39,167 | 11,937.92 | 1,870.05 |
| 1943 to April 1 | 10,441 | 3,049.01 | 234.73 |
| Totals | 668,985 | $170,455.47 | $22,072.11 |

The accountant testified that it was impossible to break up the figures into days and defendant raised no objection to the accounting period extending to April 1st, instead of March 23d, the date of expiration of the patent.

Thus the total sales of models 73 and 74 were 5.13% of the total of all sales, while the net profits on models 73 and 74 were 11.29% of all the net profits.

The salaries paid to the officers—Kaplan and Stark—were included in the item of total operating expenses used as the nu-

merator in determining the percentage of overhead operating expenses to sales applied in arriving at defendant's net profits on models 73 and 74. Plaintiffs claim that they should not have been so included. If they are omitted, the percentage will be less and the net profits on models 73 and 74 greater. Plaintiffs claim that these salaries were "obviously distribution of profit" and not deductible upon the authority of the following cases: Williams v. Leonard, C. C., N.D.N.Y., 29 Fed.Cas.No.17,726, p. 1372, 9 Blatch. 476; Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L.Ed. 566; Seabury & Johnson v. Am Ende, 152 U.S. 561, 14 S.Ct. 683, 38 L.Ed. 553; and Bush & Lane Piano Co. v. Becker Bros., 2 Cir., 234 F. 79.

The Seabury case is of no importance, for it was not shown there that any sum was actually paid to the president as salary (152 U.S. p. 570, 14 S.Ct. 683).

In the Providence Rubber case the court approved the action of the Master in allowing "the usual salaries of the managing officers" and in refusing to allow "the extraordinary salaries which it appeared by the books had been paid, being satisfied they were dividends of profit under another name, and put in that guise for concealment and delusion" (9 Wall. p. 803).

In the Williams case the infringers seem to have been partners and the infringing business their only business. Their "salaries" were disallowed, the court saying (29 Fed.Cas.No.17,726, p. 1373 left column), "What, in good faith, the defendants pay to others, as expenses, may be taken as the cost, to them, of their manufacture. What they take to themselves are gains."

In the Bush & Lane case the defendant was an incorporation of the business created by Becker. Becker was the president; the only stockholders were Becker, his wife and his attorney, who was also the secretary. 85% of the gross profits was paid to Becker as salary and 5% to the secretary. This was held to be "but one method of distributing earnings to stockholders in a 'close corporation' (as Becker called it) which has never paid a dividend" (page 80 of 234 F.) and the deductions were not allowed. The court, however, approved the action of the District Court in taking evidence as to the usual cost of superintending and managing a business of the kind and extent testified to by Becker and in adding that to the factory cost in order to determine the profits.

In Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257, 283, Turner was the infringer and a salary of $6,000 paid to him was disallowed as an expense item on the ground that "it would plainly constitute a profit to Turner from the infringement."

In Callaghan v. Myers, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547, the members of the firm of Callaghan & Co. were found to have infringed a copyright. As a part of the expense of conducting their business, the Master had disallowed the amounts paid to the partners for their services in the way of salaries. The partnership agreement authorized their payment as family and personal expenses. In affirming, the court said at page 664 of 128 U.S., at page 190 of 9 S.Ct.: "We do not think that the value of the time of an infringer, or the expense of the living of himself or his family, while he is engaged in violating the rights of the plaintiff, is to be allowed to him as a credit, and thus the plaintiff be compelled to pay the defendant for his time and expenses while engaged in infringing the copyright. * * * The case stands on a different footing from that of the salaries of the managing officers of a corporation, as in Providence Rubber Co. v. Goodyear, [76 U.S.] 9 Wall. 788, [19 L.Ed. 566]."

I think the rule to be deduced from these cases is that, in determining the profits of an individual or a partnership infringer, to which the patentee is entitled, no deduction of any amounts drawn out, either as salaries, living expenses or otherwise, is to be allowed as a credit; and that, in the case of corporate infringers, whether or not a close corporation, salaries to officers in payment of services rendered will be allowed as a credit, but only if such salaries are reasonable in amount and are not a distribution of profits in disguise. The courts will not hesitate, where salaries seem to be excessive and to

be really a division of profits, to cut down the amount to a reasonable figure (National Folding-Box & Paper Co. v. Dayton Paper Novelty Co., C.C., S.D.Ohio, 95 F. 991, 994); "* * * any amount in excess of a reasonable salary is not deductible." W. H. Miner, Inc., v. Peerless Equipment Co., 7 Cir., 115 F.2d 650, 656, left column.

■ Nothing in the record indicates that the salaries paid to Kaplan and Stark were, in any sense, a distribution of profits in disguise, and, in view of the foregoing authorities, this exception must be overruled, unless the salaries can be said to be either unreasonable or extraordinary. Plaintiffs' claim appears to be that all the monies paid to Kaplan and Stark were, in fact, a distribution of profits in disguise or, at least, unreasonable salaries, because the salaries paid during the seven year period aggregated $281,800, while the net profits, after deducting the salaries, aggregated only $204,606.33; in other words, that the salaries were about 58% of the total.

The conclusion, however, does not follow. The reasonableness of the salaries depends upon whether they were commensurate with the value of the services rendered. Plaintiffs offered no evidence on this point. The Master found that the salaries were neither unreasonable nor extraordinary and that the several increases were commensurate with, and fully justified by, the continued growth in defendant's business, the declines in the gross business in 1942 and 1943 being attributed to the war. Increases in salaries commensurate with increases in the business were approved by Judge Learned Hand in Page Machine Co. v. Dow, Jones & Co., D.C., S.D.N.Y., 238 F. 369, 375.

The Master's conclusion is approved and this exception will be overruled.

■ *May losses of one year be deducted from profits of other years?*

The accountant's statements show that in 1938 and 1939 defendant sustained losses on model 73 of $288.07 and $57.37, respectively, and that in the other five years of the accounting period its profits on model 73 were $1,174.09. The Master deducted one from the other and allowed plaintiffs only $828.65, the net amount. Plaintiffs'

exception must be sustained and the total profits of $1,174.09 allowed to it.

In Duplate Corp. v. Triplex Co., 298 U.S. 448, 452, 56 S.Ct. 792, 794, 80 L.Ed. 1274, the court said: "A sale resulting in a loss may not be offset by an infringer against another and independent sale resulting in a gain for the purpose of extinguishing or reducing a liability for profits."

This case was followed in A. B. Dick Co. v. Marr, 2 Cir., 155 F.2d 923, 928, left column, where losses and gains from sales of the infringing articles were segregated and the losses were not allowed as credits against the gains.

There are many other cases to the same effect.

■ *Was defendant's infringement conscious and deliberate and are plaintiffs entitled to increased damages because thereof?*

The Master awarded plaintiffs the gains and profits realized by defendant from its sales of the infringing models. He refused to make any award of damages, holding that the evidence left too much to inference and conjecture for him to form any proper or intelligent basis for an award of damages, whether on an established royalty basis or otherwise. He also refused to find that there was conscious and deliberate infringement.

■ The Master's conclusion as to the paucity of the evidence on this score is correct. No such established royalty as is required, however, was shown and no other evidence as to damages was offered. Therefore, the only question here is whether the statute, Section 70, Title 35, U.S.C.A., authorizes increase of an award for infringement where it is based solely on profits. That the statute confers no such power seems well established. New England Fibre Blanket Co. v. Portland Telegram, 9 Cir., 61 F.2d 648, certiorari denied 289 U.S. 752, 53 S.Ct. 696, 77 L.Ed. 1497; Sutton v. Gulf Smokeless Coal Co., 4 Cir., 77 F.2d 439, 442; Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 66 F.2d 361, 362.

This exception must, therefore, be overruled.

*What is the proper accounting period?*

The interlocutory judgment directed defendant to account for the period from December 30, 1936, which was six years prior to the institution of the action, to March 23, 1943, the date of expiration of the patent. Defendant claims that the accounting period should start, either on January 26, 1942, the date when the mandate of the Circuit Court of Appeals for the Eighth Circuit, affirming the decree of Judge Otis that defendant's models 73 and 74 infringed claim 2 of the Campbell patent, was filed, or on February 18, 1941, the date of the entry of Judge Otis' decree in the District Court for the Western District of Missouri.

A summary of the litigation involving the Campbell patent is necessary.

On April 10, 1933, plaintiffs brought suit in the District Court for the Western District of Missouri against Western Auto Supply Company, a customer of defendant, for infringement of the three claims of the Campbell patent and also for infringement of an earlier patent issued to one Dyer on October 7, 1919, which covered much the same device as that covered by the Campbell patent. The case was tried before Judge Collet who, on November 2, 1937, held the Dyer patent valid and infringed (35 U.S.Pat. Q. 324), and who, in a supplemental memorandum on December 9, 1937 (35 U.S. Pat. Q. 542), held the Campbell patent invalid for lack of invention as to all three claims, although he found that it was "a simplified device utilizing the same principle and accomplishing the same results" as the Dyer patent.

Both parties appealed to the Circuit Court of Appeals for the Eighth Circuit. Both appeals were dismissed on April 12, 1939, on stipulation of the parties. Western Auto Supply Co. v. St. Clair, 106 F.2d 1022. It appears that a settlement had been agreed on under which the Supply Company paid plaintiff $10,000, to which the defendant here contributed.

In June and July, 1939, plaintiffs brought two suits in the District Court for the Western District of Missouri against Montgomery Ward & Co. and Sears Roebuck & Co. for infringement of all three claims of the Campbell patent and also for infringement of the Dyer patent, although the latter had expired in 1936. Both concerns were customers of defendant here, which had manufactured the devices sold by them. Both cases were tried together before Judge Otis who filed an opinion on December 30, 1940 (Clair v. Montgomery Ward & Co., D.C., 36 F.Supp 664), holding both claim 1 of the Dyer patent and claim 2 of the Campbell patent valid and infringed. (Claims 1 and 3 of the Campbell patent were withdrawn before trial, so that they were not passed on.) Judge Otis held that the device of the Campbell patent was an improvement on the Dyer patent (which was not practicable and had never been used), embodying the same principles but cheaper, simpler and attachable to the automobile without tools, several hundred thousand of which had been sold in a single year, and that defendant's model 73, patented by Perkins on August 10, 1928, and model 74, patented by Stark on June 29, 1943, were obvious copies of the Dyer and Campbell devices, the distinction being "immaterial in the principles involved and scarcely discernible in form." He also held that plaintiffs were entitled to damages for six years from 1933, the time when they learned of the sales by defendants of the infringing devices, to the dates of bringing suit. He also found that on May 31, 1939, in another suit in his court between plaintiffs and Montgomery Ward & Co., a decree had been entered on the stipulation of the parties holding both patents to be valid. The defendant here openly conducted the defense of these suits and bore the expense thereof.

Both defendants appealed to the Circuit Court of Appeals for the Eighth Circuit, which, on December 1, 1941, rendered its opinion (Montgomery Ward & Co., v. Clair, 8 Cir., 123 F.2d 878, 882), holding the Dyer patent valid but not infringed and claim 2 of the Campbell patent, valid and infringed by both models 73 and 74. The court held that both models were "substantially identical with the Campbell device in (1) result attained, (2) means of

attaining that result, and (3) the manner in which their parts operate and co-operate to produce that result", that model 73 "does indirectly exactly what the Campbell device does directly," and that model 74 "is only in so far as material a reversal in form of No. 73." And, in holding that damages should be allowed for infringement of the Campbell patent, despite the long delay in bringing suit, the court said, "During the period of delay the record discloses that the appellees (plaintiffs) were litigating in the courts the validity of both the Dyer and the Campbell patents until within about two months prior to the commencement of the present suits, and that appellants had knowledge of that fact. An inventor is not required to litigate the validity of his patent against every possible infringer. A suit pending to sustain the validity of a patent is notice to all infringers of the insistence of the patentee upon his claimed rights."

Finally, on December 30, 1942, this action was begun for infringement of all three claims of the Campbell patent by the same device, models 73 and 74. On March 22, 1943, Judge Coxe granted plaintiffs' motion for summary judgment, D.C., 51 F.Supp. 207. He held that the two decrees of Judge Otis and of the Circuit Court of Appeals was res adjudicata of the issues, the defendant having admitted the facts as to the Missouri litigation but having denied infringement and having pleaded various defenses attacking the soundness of the Missouri decision and raising the same issues adjudicated in those suits.

Subsequent proceedings (See 2 Cir., 138 F.2d 828, D.C., 58 F. Supp. 378 and 2 Cir., 148 F.2d 644) relating to plaintiffs' failure to disclaim claims 1 and 3 of the Campbell patent within a reasonable time after the decision by the Court of Appeals need not be gone into.

Defendant's argument that one of the two shorter periods should be the period of accounting is predicated upon the assertion that after the decision by Judge Collet and until the decision by Judge Otis, or until the decision of the Circuit Court of Appeals upon the appeal from Judge Otis' decree, the Campbell patent was com- pletely invalid and, to quote from its brief, "structures embodying the Campbell invention were in the public domain and every member of the public, including this defendant, had a right to manufacture and sell devices embodying the Campbell structure." In other words, defendant argues that it could not be held to have infringed prior to the decision of Judge Otis at the earliest. But whether the Campbell patent had been infringed during the period subsequent to the decision of Judge Collet was one of the questions involved in the suits before Judge Otis. He held that there had been infringement by defendant's customers since 1933 and was affirmed in this respect by the Court of Appeals. Although defendant was not a party to that litigation, the decrees therein are forever binding, both for and against it, for it conducted the defense of those suits openly and avowedly, as Judge Otis had found. See Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 116 F.2d 845.

Defendant's argument is utterly unsound. It is similar to the argument which was distinctly overruled, though in a somewhat different situation, in Tilghman v. Proctor, 125 U.S. 136, 149, 8 S.Ct. 894, 901, 31 L.Ed. 664, where the court said:

"It was argued for the defendants that the limited construction given to Tilghman's patent by the decision of this court in Mitchell v. Tilghman, 19 Wall. 287 [86 U.S. 287, 22 L.Ed. 125], became a restriction upon the scope of the patent, and so remained until revoked, and therefore that the defendants in this suit should not be held liable for infringement for the time between the date of that decision and the expiration of the patent. * * *

"But the injustice done to a patentee by an erroneous decision in a suit against one infringer will not justify a repetition of the injustice in another suit against distinct infringers in no way connected with the first one. The decision against Tilghman in his suit against Mitchell was binding as between those parties only, and having been directly overruled by this court on full consideration in 102 U.S. 707 [36 L.Ed. 279], when the present case was first brought before it, affords no ground for

not holding these defendants to account to Tilghman for all the profits, gains, and savings which they have made from the use of his invention during the whole period of their, infringement."

The decision of Judge Collet that the Campbell patent was invalid did not deny to plaintiffs the right to bring either the suits before Judge Otis or this suit for infringement of the Campbell patent. Triplett v. Lowell, 297 U.S. 638, 642–645, 56 S.Ct. 645, 80 L.Ed. 649.

■ What defendant really seeks is a reversal of the decisions of Judge Otis and the Court of Appeals that there might be infringements of the Campbell patent during the period immediately subsequent to the decision of Judge Collet. That it cannot do in this action. Their decisions have become res adjudicata.

No justification has been established for shortening the accounting period from that specified in the interlocutory judgment, viz., from December 30, 1936, to March 23, 1943.

*Defendant's exceptions to master's report.*

Defendant has filed thirteen exceptions, asserting that the Master erred in various respects. It will not be necessary to consider each one separately but they may all be reduced to two contentions.

In the first place, defendant claims that the profits should be apportioned, upon the theory that, as model 73 was manufactured under a patent issued to one Perkins on August 10, 1928, owned by defendant, and as model 74 was likewise manufactured under a patent issued to one Stark on June 29, 1934, also owned by defendant, plaintiffs should have shown either that the profits were due solely to their patent or what proportion thereof was due to their patent.

■ But the rule requiring apportionment of profits applies only where the patent infringed covers only an improvement or a part of a device, and not an entirely new device. In such cases the patentee must show in what particulars his improvement has added to the usefulness of the device. The cases cited by defendant are of this character.

In Garretson v. Clark, 111 U.S. 120, 4 S.Ct. 291, 28 L.Ed. 371, the patent was for an improvement in the method of moving and securing in place the movable jam or clamp of a mop head. In Keystone Manufacturing Co. v. Adams, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103, the patent was upon an improvement in cornshellers.

■ Here, however, the Campbell patent was not for an improvement. It was for a new device, many thousands of which had been sold. And, though defendant may have manufactured its models 73 and 74 under patents owned by it, they were, as both Judge Otis and the Court of Appeals held, obvious copies of the Campbell device and substantially identical with it, doing exactly what it did. Plaintiffs have shown the profits made by defendant. Defendant then had the right to disprove them, or to offer evidence in mitigation, or both. Westinghouse E. & M. Co. v. Wagner R. & M. Co., 225 U.S. 604, 616, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653. It did nothing except to offer the Perkins and Stark patents in evidence and to give some testimony that they were improvements upon the Campbell device. And it now asserts that on the basis of such evidence plaintiffs are not entitled to all its profits but only to such portion thereof as remains after deducting that portion of its profits attributable to the improvements covered by the Perkins and Stark patents and that the burden of segregating the profits was upon plaintiffs.

Both these questions, however, were decided against defendant's contention in Christensen v. National Brake & Electric Co., D.C., E.D.Wis., 10 F.2d 856, 866, first paragraph left column and two top paragraphs right column. There the court said:

"Some contention arises over an alleged necessity of segregating profits made upon the infringing structure, the defendant claiming that in part they were attributable to its 'improvements.' Speaking broadly, I assume that when an infringer claims to have 'improved' the patented structure, so long as he is still within the inhibited field of the patent—either as a whole or respecting any mechanical element or part of the structure—he is still infringing. If

by such 'improvements' he really betters, even beyond the contemplation of the patentee, but does not make a new or different structure in a legal sense; if he thereby promotes, no matter in how high a degree, its mechanical or commercial favor; if he thereby increases the gains and profits on an individual sale, or decreases them, but because of its greater favor with the public, increases production and thereby aggregate profits—he is still exercising the patentee's rights. He is accountable for the profit whether his infringement embody the most, or the least, favored of possible variant structures. * * *

"But so far as it is necessary to determine any question of burden, I have no hesitation in agreeing with the master that if a situation was disclosed which called for segregation, the defendant disclosed it and should carry the burden of making the segregation, if possible, because its claim, if at all tenable, arises out of its disclosure that it commingled other elements with the elements of plaintiff's combination.

"That is to say, when once it is shown that the infringer sold a structure having the unitary characteristics of a patented structure, and that a profit was realized on such sale, the patentee ought to have the right to treat that as a sufficient prima facie showing of the measure of his recovery; and if the infringer, though conceding the prima facie profit, desires to mitigate the recovery by showing attribution of the profit or a part thereof to something else, the latter showing should be considered as a defensive burden resting on the infringer." See also Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U.S. 441, 452-454, 12 S.Ct. 49, 35 L.Ed. 809.

Finally defendant claims that, as model 74 was sold at a much higher price than model 73, the difference being 12 cents in 1941, plaintiffs are entitled to only such portion of the profits on model 74 as would result from applying the much smaller percentage of the profits on model 73, determined by dividing the total sales of model 73 into the total profits on model 73, to the total sales of model 74.

■ The claim asserted cannot be sustained. Plaintiffs are entitled to all the profits on all sales of all infringing devices. The profits on the sales of one infringing device can neither be decreased nor increased by reference to the profits on the sales of another infringing device.

All defendant's exceptions are overruled.

### Other matters

■ The Special Master asks that his compensation be fixed at the sum of $2,000. In his affidavit he says that he devoted a total of 84 hours to the work of the reference and itemizes the same. Neither party has objected to the amount requested. The amount requested is about $24 per hour. The rate is less than that allowed by Judge Leibell in Sheldon v. Metro-Goldwyn Pictures Corporation, D.C., S.D.N.Y., 26 F.Supp. 134, 145, and the total compensation here will be fixed at $2,000, to be paid by defendant.

■ The Special Master's report is confirmed, with the one exception above noted. The profits of defendant, for which it must account to plaintiffs, are fixed at the sum of $23,246.20, upon which interest will be allowed from September 19, 1946, the date on which the Master's report was filed. Plaintiffs ask that interest be allowed from March 23, 1943, the date of the expiration of the Campbell patent, as was done in Starr Piano Co. v. Auto Pneumatic Co., 7 Cir., 12 F.2d 586, 587, right column last paragraph and left column top paragraph. But the later cases of Duplate Corp. v. Triplex Co., 298 U.S. 448, 459, 56 S.Ct. 792, 80 L.Ed. 1274; Gotham Silk Hosiery Co. v. Artcraft Silk Hos. Mills, 3 Cir., 147 F.2d 209, 225, and Perrine v. Burdick, 8 Cir., 138 F.2d 861, 866, right column, hold to the contrary.

Let plaintiffs submit proposed final decree on five days' notice.