**DURO CO. (OF OHIO) v. DURO CO. (OF NEW JERSEY).**

**DURO CO. (OF NEW JERSEY) v. DURO CO. (OF OHIO).**

Nos. 4689, 4710.

Circuit Court of Appeals, Third Circuit.

Feb. 4, 1932.

Rehearing Denied April 11, 1932.

See, also, (D. C.) 27 F.(2d) 336.

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio (Minton & Rogers, of Trenton, N. J., of counsel), for Duro Co. (of Ohio).

Harry B. Rook, Russell M. Everett, and Everett & Rook, all of Newark, N. J., for Duro Co. (of New Jersey).

Before BUFFINGTON and THOMPSON, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge.

The Duro Company, complainant, is a corporation of the state of Ohio, and the Duro Company, now Doering Spark Plug Company, is a corporation of the state of New Jersey.

This appeal arises from an accounting in a trade-mark case. The accounting was ordered by a decree which was entered pursuant to the opinion and mandate of this court at 27 F.(2d) 339. The decree was entered July 24, 1928, wherein it was adjudged that the word "Duro" applied to mechanical and electrical apparatus of the plaintiff is a valid trade-mark, and has been, and is now, the sole and exclusive property of the plaintiff herein. It was further decreed that the defendant has infringed the said trade-mark "Duro," and has violated plaintiff's rights by selling spark plugs under the trade-mark "Duro" in cartons and packages bearing that name. The defendant, its successors and assigns, were perpetually enjoined from using the word "Duro" on the products which it manufactures and sells, and particularly upon electrical equipment, such as spark plugs or any similar article.

The matter was referred to Alexander T. Schenck, Esq., as master, to take the usual accounting and report to the court the defendant's profits, by reason of the infringement or damages caused by its wrongful acts. It was further adjudged that plaintiff recover from the defendant its taxable cost herein. The accounting period extended from June 26, 1926, and ended July 28, 1928. The spe-

cial master filed a final report in the District Court on March 7, 1930. He reported that defendant had realized a profit of $3,299.34 during the accounting period; and upon the insistence of plaintiff's counsel that plaintiff was also entitled to an award of damages, the master recommended an award of damages, based on a royalty of defendant's net sales, amounting to $4,827.23, such royalty to cover both damages and profits.

Both parties filed exceptions to the master's report, to which, after argument, the District Judge requested the master to file a supplemental report. On April 14, 1931, a final decree was entered in the District Court, overruling all of plaintiff's exceptions, allowing two, and denying the remainder of defendant's exceptions. The decree awarded no profits and no damages to the plaintiff, and ordered that each party pay its own costs. Plaintiff filed its appeal on July 3, 1931, and on July 13, 1931, defendant filed its appeal. The two appeals have been consolidated and one record has been printed for both appeals, pursuant to the order of this court.

It appears that the plaintiff, Duro Company, of Ohio, used its mark on internal combustion engines, and defendant, the Duro Company, of New Jersey, used the mark on spark plugs. The accounting is somewhat more complicated, from the fact that the defendant was engaged in the manufacture of three kinds of products: Spark plugs, cylinder rings, and an automatic linker, a sausage machine for Automatic Linker, Inc. The first of these, the spark plugs, was an infringing product, while the other two were not. In the accounting, therefore, it became necessary to segregate the sales receipts and expenses for the spark plug business from the piston ring and automatic linker business. The accounting here is rendered more difficult, because of the fact that the judge in the court below filed no opinion, and we are thus deprived of the benefit of his discussion of the evidence and the conclusions which he reached on the various matters involved. We are aided, however, by the light which is thrown by the acts of Congress. The Trade-Mark Statute, section 19 of the Act of 1905 (15 USCA § 99), provides that: "Upon a decree being rendered for wrongful use of a trade-mark the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction. The court shall have the same power to increase such damages, in its discretion, as is given by section 96 of this chapter for increasing damages found by verdict in actions of law; and in assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost which are claimed."

Under the act of Congress, therefore, it is clear that in assessing profits, the plaintiff is only required to prove defendant's sales; defendant must prove all elements of cost which are claimed.

How, then, does the record stand on the question of the sales shown and the expenses which are claimed by defendant, against the amount of such sales? The treasurer, Robert M. Perkins, called as a witness by the defendant, shows a loss from the spark plug business, during the accounting period, of $22,320.72. Defendant also called an accountant, James J. Hastings, who made a report showing a loss by defendant on the spark plug business of $20,950. On the other hand, Roy F. Miller, called by the plaintiff, testified that if certain changes in the accounts were made, the business would show a profit of $7,300. By rejecting certain of the items of expense claimed in the accounts by defendant, the master found that defendant had realized a profit from the spark plug business of $3,299.34. Or in lieu thereof, damages on an arbitrary royalty of 3 per cent., amounting to $4,827.23. The learned judge, on the other hand, by allowing certain items of expense, which the master had rejected, concluded and decreed accordingly, that plaintiff was entitled to no profits and to no damages.

As there appears to be no question that the amount of the sales was $160,907.73, it is entirely evident, from these conflicting results, that the elements of disagreement are to be found in the costs or items of expense allowed to the defendant.

It can be fairly said that large items of attempted charges against profits and large items of alleged depreciation should be itemized and should not be excepted, if generalized. To illustrate: The item of expense entitled "office material," amounting to $4,771.65, claimed by defendant which the master refused to allow because it included the salary of the defendant's treasurer, the court allowed.

Mr. Hastings attempted to establish items of depreciation on display stands, viz.: $3,389.89, $3,496.65, and $1,984.00, being for the years 1926, 1927, and 1928, respectively, aggregating $8,860.54, or 88 per cent. of the cost of the stands during the accounting peri-

od. These items were disallowed by the master, because they should have been capitalized and depreciated over a period of years. The master later allowed these items "in the absence of any other evidence as to how long the display stands would last."

Under the item, "general expense," defendant claimed the aggregate amount of $4,-560.42. The master held that this was too indefinite and not satisfactorily proven. In this item, the general expense for 1926 is given as $1,496.10, one-half of which was charged to plugs, and one-half to rings, which was purely an arbitrary proration.

■ The master allowed the item for experimenting on plugs, which was apparently not allowable under Coffield Motor Washer Co. v. Wayne Mfg. Co. (C. C. A.) 255 F. 558. The defendant claimed as a credit "bad debts," amounting to $2,755.55, charging the whole of this item against spark plugs, although the company did a net business in rings, of $12,-906.35, during the accounting period. Nor did they apply any bad debts against linkers, although in 1927 and 1928 their net sales of linkers amounted to $68,399.15. This item the master properly disallowed.

■ Defendant claimed an item of $1,710.63, which is designated as "Robison Theft." This was an attempt to charge against spark plug profits, a sum of money stolen by an employee, certainly an extreme case in claiming costs and expenses. In like manner, a charge was made of $2,429.35, being the cost of defending this suit, which was, of course, disallowed.

On the other hand, the plaintiff seriously complains of items of cost which it asserts were erroneously allowed by the Master. For instance, he allowed $3,580.00 under the item, "Manufacturing super labor"; $879.72, under the item "Tool-room expense"; $41,846.-50 under the item "Selling expense"; $1,705.-86 under the item "Rent"; $493.13 under the item "Automobile expense"; $710.87 under the item "General factory expense"; $6,488.-29 under the item "Advertising." In a general way, these various items were objected to by the plaintiff, because defendant kept no record of the amounts directly chargeable to the infringing business, and because it was commingled with the expense of the noninfringing business, their determination depending not upon definite proof, but largely on estimates, the correctness of which are purely conjectural.

Not only did defendant's experts fail to agree in their accounting, but Hastings took the liberty of condemning Perkins' method.

He said his method "is unheard of in accounting, and most unusual from an accountant's standpoint." (Record, page 59.)

■ The master finds that "after the suit was started, it was Mr. Robert M. Perkins (perhaps with the advice of Mr. M. G. Perkins) who decided to continue the use of the trademark 'Duro,' and to take the chances on the outcome of the suit. He had full knowledge that the plaintiff objected to that use. His action was intentional. He was responsible for the infringement of the plaintiff's trademark by the defendant company. While it does not appear that he acted in bad faith, his use of the plaintiff's trade-mark was found by this Court to be wrongful. In my opinion, therefore, the defendant should not be permitted to deduct his salary as part of its costs. To permit the defendant to deduct his salary as part of its costs, would be to require the plaintiff to pay him a salary for doing intentional wrongful acts in violation of the plaintiff's rights."

■ In view of the provisions of the act of Congress, which provides that in assessing profits, the plaintiff shall be required to prove defendant's sales only, and that defendant must prove all elements of cost which are claimed; the failure of the defendant to make the requisite proof with any approximate accuracy, substituting therefor very general and uncertain estimates in place of proof; the fact that the difficulty of accounting is due solely to the defendant's action in commingling the expense of the infringing business with the expenses of its noninfringing business makes it necessary and proper to apply the rule of accounting laid down by Judge Taft in the case of National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co. (C. C.) 95 F. 991, 996; and also the rule as laid down by Judge Woodruff in Hitchcock v. Tremaine, 12 Fed. Cas. 244, 245, No. 6,539, which was affirmed by the Supreme Court in 23 Wall. (90 U. S.) 518, 23 L. Ed. 97.

A very careful examination of those cases is necessary in order to ascertain the proper rule which was intended to be applied to those particular cases.

In the Folding Box & Paper Company Case, the infringing goods constituted only a part of the business. In that case, Judge Taft undertook to ascertain the gross sales, and from these he deducted: First, cost of material; second, factory cost, labor, etc.; third, the percentage of the general expenses of the defendant's business properly attributable to the manufacture and sale of the box-

es. Here, we must distinguish between general expenses, being those incurred for all goods alike, such as rent, clerk hire, and particular expenses, being those caused by certain particular goods, and not by reason of selling all the goods, such as cartage on certain instruments, etc., commission of particular sales, etc. When the aggregate sales of the infringing business are ascertained, the percentage of the general expenses properly attributable to the infringing business must be determined. This is determined by the ratio or percentage between the aggregate sales of the entire business and the aggregate sales of the infringing business. Having determined this ratio, or the percentage of the infringing sales to all sales, he took the percentage of the expenses of the entire business and thus got the expenses to the infringing business.

The same method of computation was applied by Judge Woodruff in Hitchcock v. Tremaine. There, there was an infringing device which was an attachment to an organ, and the conclusion to be reached was the profits derived by the defendant from dealing in such attachment, it appearing that defendant also dealt in musical instruments not having such attachment. The court said: "The conduct of their business necessarily involves certain general expenses, which are as truly expenses of dealing in one class of goods as of dealing in another class. Such expenses as general clerk hire, rent, [etc.], concern the entire business, and, in any estimate of gains and profits are properly apportionable to the several kinds of business done or kinds of goods sold, when the profits of either are to be separately stated." The judge further stated: "The gross proceeds of sales of each kind being ascertained, and a deduction from each being made, of such special or peculiar expenses as, in a pro forma account, would be chargeable to each, there would remain, for allotment to each account, its proportionate share of the general expenses incurred for the benefit of all, that is, for the maintenance and conduct of the business; and this distribution should be in the proportion of the several amounts of sales of each." In another part of the opinion, Judge Woodruff said, referring to the master's report: "He should have permitted the defendants to prove the general expenses of their business, incurred alike to effect the sales of all goods—that is, not specially incurred in reference to any particular class or kind; and these should have been apportioned according to the amount of gross sales, charging the sales of attachments with its relative share."

This general method of distribution met with the approval of the Supreme Court in 23 Wall. (90 U. S.) 518, 23 L. Ed. 97.

Total sales of all products (Perkins' Rec. 233), $241,772.75.

Spark plug sales (Perkins' Rec. 233), $160,907.73.

Ratio of plug sales to sales of all products, 66.55 per cent.

Total cost of operating from June 26, 1926, to July 28, 1928 (Perkins' Rec. 233) claimed by defendant appellee ........ $287,356.61

From this amount of operating cost should be deducted the several items of cost of operation in the above period, which were disallowed by the master, these disallowed items being as follows: Office material, general expense, manufacture labor (Wilkening), Cust. Disct., defective plugs, Jr., defective plugs, Sr., interest and discount, valve radio experimental, bills receivable, bad debt, Robison theft, defective rings, office material expense, general expense, interest and discount, Linker machine expense, bad debt, patents, office material and expense, general expense, trade-mark and Linker expense, the aggregate amount of these items being, .......... 79,168.20

Total cost of operating after deducting disallowed items .... $208,188.41

Applying to the allowable cost of operating, $208,188.41, the percentage representing the ratio of plug sales to total of all sales, 66.55 per cent., we arrive at the figure of $138,549.38, being the amount of operating costs applicable to plugs.

The total sales of plugs amounted to ..................... $160,907.73

The cost of operating business applicable to plugs ........ 138,549.38

Profit on plugs .... ......... $ 22,358.35

■ Under this method of computation, the amount of the decree to which the plaintiff is entitled is $22,358.35, to which should be added interest from the date when notice of infringement was given to the defendant, which date can be ascertained from counsel before the mandate goes down. This allow-

ance of interest is justified by the decision of Judge Taft in the case of National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co., supra, wherein he said: "Interest will be allowed on the amount found due from January 1, 1893. The defendant had full notice of complainant's rights, and chose deliberately to run the chances of the validity of the patent. I see no reason, therefore, for not including this usual element of damages in the recovery."

The decree of the District Court is reversed, and the record will be remanded with directions to enter a decree in favor of the Duro Company, a corporation of Ohio, plaintiff appellant, against the Duro Company, a corporation of the state of New Jersey, in the sum of $22,358.35, together with interest as above, together with costs of suit in this court and the court below.