**CHAMPION SPARK PLUG CO. v. SANDERS et al.**

**Civ. A. No. 3767.**

United States District Court
E. D. New York.

Dec. 3, 1952.

Ward, Crosby & Neal, New York City, for plaintiff, by Joshua Ward, New York City, of counsel.

Bernard Bienstock, New York City, for defendants.

BYERS, District Judge.

Hearing on exceptions to report of Master to take testimony and report as to damages and profits, including legal expenses of the proceeding, deemed to have been suffered or incurred by the plaintiff by reason of a finding adjudging that the defendants are in contempt of the decree of this Court entered on mandate, as stated in the opinion reported in 102 F.Supp. 340.

The report concludes that the plaintiff is entitled to recover of the defendants:

| | |
|---|---:|
| Profits | $14,275.92 |
| Legal Fees | 1,500.00 |
| Legal Expenses | 934.53 |
| Total | $16,710.45 |

Both parties have filed objections and challenge the computations which underlie the foregoing figures.

It will be convenient to treat the findings separately, together with the respective objections, references being to the pages of the report unless otherwise indicated.

**1.** *Defendants' total sales of spark plugs,* manufactured by plaintiff, between February 9, 1950 and March 24, 1952, 272,540 at 13¢ each, $35,430.20.

The foregoing appears on page 3 and is not contested by either party.

Plaintiff's first objection is to the statement on page 2 that "these sales were advertised and were openly made," which is said to be erroneous and misleading because most were to purchasers (mistakenly called "agents" in the petition) who shipped the plugs to foreign countries. The evidence does not disclose anything clandestine about the sales, some of which seem to have been the result of advertisement, such as that in the Journal of Commerce. This objection by plaintiff is not sustained.

**2.** *The defendants' cost items as allowed.*

The finding on page 5 reads:

"I find and report that the defendants have proved their cost items and are allowed the same, save for certain excluded cost items later stated, which are disallowed as a matter of law."

Objections 2 and 3 of the plaintiff go to the nature of the proof, namely, the character of the defendants' records—such as they are—which were relied upon by the Master; these consist only in defendants' checkstubs of amounts drawn to cover cash outlays in connection with the purchase of spark plugs for repair, and duplicate invoices of sales of the completed commodity. Since the raw materials so acquired are discarded spark plugs bought from garages, filling stations and other similar sources, of which not all are Champion spark plugs, it is evident that the defendants' records are less than convincing as to their purchase of plugs originally manufactured by the plaintiff.

As the Master points out, the cost price for discarded Champion spark plugs "could

only be averaged or estimated, based upon the prices paid for bulk lots" of miscellaneous plugs (p. 5). This, of course, could be important because the unit price would vary according to the number of Champion plugs which had to be discarded during the course of repair (Record, p. 16), and the cost of nuts and terminals used as replacements when required (Record, p. 23). Thus the true materials cost, which would be the first item in the computation of profit, is an approximation or average figure stated by the defendant, Samuel Sanders; he also decided upon the rental charge of the premises occupied by Perfect Recondition Spark Plug Company in property owned, and in part occupied, by Peter Sanders, the father of the other defendants bearing the same name.

To digress for a moment concerning Peter: A motion to dismiss the cause as to him was denied at an earlier stage of the case in the absence of testimony that the ostensible showing of the certificate of registration of the trade name was actually rendered effective in the operation of the enterprise by the sons, Samuel and Harry. There is such testimony in the record before the Master, which could be the basis for a renewal of that motion.

Resuming the discussion of the plaintiff's objections to reliance upon the defendants' meager records, that with respect to sales is more persuasive than of the cost items, since the duplicate invoices are specific in disclosing the sale of Champion spark plugs during the period February 9, 1950 to March 24, 1952 as stated by the Master to be 272,540. This figure is not challenged by the defendants and is therefore deemed to be correct. The selling price of 13¢ per plug as stated by the Master is also unchallenged. Thus the computation of the total figure resulting from the defendants' sales, as above stated, of $35,430.20.

■ The plaintiff's objections 2 and 3 are addressed to:

(a) The Master's reliance upon the testimony of an accountant who did not himself prepare the records, such as they are, but relied upon what was related to him by another accountant who seems to have made up income tax data; the former made spot checks of the invoices. He said (Record, p. 34) that he did not examine the checkbooks of the Perfect etc. Company; he also seemingly relied upon oral comments and explanations made to him by the defendant, Samuel Sanders, as to the practices followed by him and his brother in conducting the business.

The Master accepted the testimony of the accountant and of the defendant, Samuel Sanders, having in mind the provisions of Fed.Rules Civ.Proc.Rule 53, subd. (d) (3), 28 U.S.C.A., under which he had made a preliminary order. Since he was apparently satisfied as to the facts, the method by which they were established should not be too critically examined by the Court under the circumstances of this case. What could be reasonably expected by way of the maintenance of accounting records by a substantial business enterprise, would not necessarily apply in the case of a two-man shop in which but few others—the exact number does not appear—were employed. It is true that a discrepancy was disclosed in the original statement, Exhibit A, Schedule I, of some 950 Champion spark plugs sold by the defendants and omitted from that schedule "inadvertently," according to Mr. Samuel Sanders. It is true also that the deduction allowed for commissions is not supported by direct evidence, or even names of recipients; however, these blemishes seem not to have discredited the recapitulation as a whole, in the view of the Master, and similar tolerance should govern this decision. This aspect of the objections is not without substance. Nevertheless, it may not prevail, for I doubt if a rehearing would be productive of a more convincing showing.

(b) This phase of the plaintiff's objections goes to the allowance of any deductions to the defendants by reason of the deficiency in form above discussed, and apparently also to the merits of the items involved, even though they may be deemed to have been established.

The foregoing, and defendants' objections 1, 2, 3 and 4, apply to the same subject-matter of the report, and are addressed to the exclusions by the Master from the

claimed deductions, except number 1, which requires no discussion. That states that the entire report is objectionable because the defendants "are not guilty of contempt." Obviously, this is merely an assertion of the legal right to challenge on appeal the order of February 19, 1952.

The above quoted reference to the Master's report to such of the defendants' cost items as are allowed does not tabulate, but seemingly Schedule III of Exhibit A is relied upon. The plaintiff challenges the showing of this entire exhibit and asserts that the objection thereto was never withdrawn. The record is not sufficiently clear to present the point but for argument it will be assumed that the Master's ruling admitting the exhibit is presently open to question, and it will be sustained as to admissibility in order to dispose of a controversy which must be resolved if final determination is ever to be reached. It follows that the deductions allowed by the Master are to be tolerated, which disposes of plaintiff's objection 3 in its entirety, and presents for consideration the excluded items of defendants' credits as claimed, namely:

| | |
|---|---:|
| Partners' salaries as shown on Exhibits A and C (Objection 3) | $11,210.00 |
| Legal and Accounting Fees (Objection 4) | 1,550.00 |
| Federal Income Taxes 1951 and 1952 (Objection 2) | 793.41 |
| Total | $13,553.41 |

■ Of the foregoing, it is apparent that the subject-matter of defendants' objection 2 was inadvertently disallowed since the partnership paid no Federal income taxes but caused to be filed information returns concerning the individual taxable income of the partners. The figure disallowed ($793.-41) actually represented payments of Social Security, taxes and like items, and must be allowed as a deduction. Thus, defendants' objection 2 is sustained.

■ The item of partners' salaries is not so easy of disposition. If it represented services in the repair and sale of Champion spark plugs, no deduction would be allow-

able for present purposes. Since, however, the defendants assert that some of their salaries involved services in repairing and selling other brands of spark plugs, they argue that the exclusion of the deduction claimed should be limited to the proportion of their total business which is represented by the Champion spark plug element.

The applicable principle is stated in the Lanham Act, Tit. 15 U.S.C.A. § 1117, having to do with the recovery to which a plaintiff should be entitled in such circumstances. The provision reads in part:

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. * * *"

These defendants have not offered testimony to support a formula such as they suggest, that is, they have not undertaken to prove the proportion of their time and services put forth in the repair and sale of Champion plugs as compared with the total of all plugs handled by them, which means that the Master was not provided with the basis for the allocation which the defendants now assert he should have made.

The situation is comparable to that disclosed in Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, in which the Court examined the basis of recovery by a patentee from an infringer in a case in which it appeared that the infringing sales represented only a part of the defendant's profits. It is stated that the proof shows that the defendant had "inextricably commingled" profits atttributable to the patent and to non-infringing and valuable improvements. The infringer was said, 225 U.S. at page 619, 32 S.Ct. at page 696, to be a "trustee for the plaintiff in respect of profits." The opinion contains the following, 225 U.S. at page 620, 32 S.Ct. at page 696:

"6. But when a case of confusion does appear—when it is impossible to make a mathematical or approximate apportionment—then from the very necessity of the case one party or the other must secure the entire fund. It

must be kept by the infringer, or it must be awarded by law to the patentee. On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee and by judicial decree repeal the provision of Rev.Stat. § 4921 [35 U.S.C.A. § 70], which declares that, in case of infringement, the complainant shall be entitled to recover the 'profits *to be accounted* for by the defendant.'"

A formulation of the applicable rule will be found in Clair v. Kastar, D.C., 70 F. Supp. 484 at page 487, which cites, among other authorities, Callaghan v. Myers, 128 U.S. 617, at page 664, 9 S.Ct. 177, 32 L. Ed. 547. The defendants' objection 3, therefore, is overruled.

■ Defendants' objection 4 is directed to the Master's failure to credit them with legal and accounting fees in defending this proceeding, but the objection is untenable, whatever might be said to the contrary in a case in which a defendant should succeed in demonstrating noninfringement or absence of unfair competition. The defendants seem to rely upon certain language in the opinion in Stetson v. Stetson, D.C., 58 F.Supp. 586 at page 592, in which the contentions of that defendant were discussed, including the assertion that "its actions now adjudged contumacious were not wilful, that there was an honest legal dispute as to whether they were in violation of the decree * * *." In disposing of that branch of the case, the following language occurs:

"For the reasons stated by the master, and for the additional reason that defendant has failed to prove that these items of expense were properly deductible, as having been spent in its defense in this proceeding, I sustain the master's ruling."

There would be little reason for these defendants to rely upon the quoted language except for the following observation appearing at page 10 of this Master's report:

"As above noted, the defendants committed the accused acts openly, and apparently under a mistaken claim of right."

Perhaps something occurred at the hearing before the Master which justified him in using the concluding expression quoted, which I find it difficult to accept in view of the condition stated in the opinion of January 30, 1952:

"These plugs are painted as to the metal parts so that they look black, and for all practical purposes are black, not green as permitted by the decree, or any other color therein stated."

The testimony was that the defendants had added lamp black to the dark green lacquer, which was "consistent only with a purpose to make the metal parts appear to be black."

There was nothing in the decree on mandate which could be interpreted to give the defendants the right to paint the metal parts of the plugs, as sold by them, black. Indeed, if it pertained to this Court to do so, I should strike the word "green" from the permissible colors, for it has been flagrantly misinterpreted by these defendants in an attempt to evade the decree.

The plugs marketed by the defendants later than January 4, 1952 are not to be distinguished as to their color from those of earlier fabrication, which receives separate consideration below, but in any case it is clear to this Court that these defendants have not demonstrated an honest legal dispute within the quotation from Judge Bright's opinion, and the ruling of this Master, in excluding from the deductions the defendants' legal and accounting fees, was in accord with the decisions quoted by him at page 7 of his report. It is obvious that, like the defendants in the Stetson case, the brothers Sanders have not "furnished a satisfactory explanation of the items (legal

and accounting fees spent in defending this proceeding) so as to bring them in under expense of production and sales, and that the service rendered had nothing to do with producing profits." It results, therefore, that defendants' objection 4 is overruled.

3. *As to full discovery.* The Master states, on page 6: "Full discovery was given to plaintiff." This may be deemed to be a finding, although it is not so labeled, and it is the subject of plaintiff's objection 4 that it is not in accordance with the facts as set forth in plaintiff's objection 3. Naturally this is not the subject of a defendants' objection.

The argument in support of plaintiff's objection is really a repetition of matters heretofore commented upon in connection with objections 2 and 3 and plaintiff's citation of Van Kannel v. Uhrich, 8 Cir., 297 F. 363 is in point, but for reasons above stated, the objection cannot be permitted to prevail although it is indeed meritorious.

A recapitulation of the computations contained in the Master's report, as modified, so far as the items thus far examined are concerned, is as follows:

| | |
|---|---|
| Net profits from the sale referred to above, according to defendants' showing (p. 8) | $ 722.51 |
| to which must be added the following deductions not allowed: Partners' salaries and withdrawals | 11,210.00 |
| Defendants' legal and accounting fees | 1,550.00 |
| Total | $13,482.51 |

■ 4. *A reasonable counsel fee* incurred by plaintiff and expenses, to be charged to the defendants in this proceeding.

This subject is presented at pages 8 to 18 inclusive of the report and with a thoroughness that renders superfluous any extended comment thereon by this Court. The Master discusses the employment of two eminent firms of lawyers to present the plaintiff's case, and he shows that the bills which were rendered were fair and reasonable as between attorneys and client. He adopts the views of Judge Bright in the Stetson case when he said that he was not convinced that it was necessary for "two sets of counsel in two cities to devote the extensive amount of time testified to here to a motion." He says, on page 10:

"No extensive or costly investigation was necessary."

Since the adjectives are relative, the comment necessarily is argumentative, which will explain the lengths to which plaintiff has gone on this motion to induce the Court to supersede the Master's opinion; in his report he recapitulates the services required in this contempt proceeding and his reading of the transcript of the hearing in this Court. The basis of his finding is that fair and reasonable services would have represented twelve full days at $125 a day, and sixty hours at the rate of $25 an hour, and on page 14 he makes his computation of $1,500 as a reasonable fee. The cases cited by the Master tend to sustain his views.

Pages 16 and 17 contain the item of expenses, totalling $934.53, which is less than the amount claimed, and in this connection he says (p. 15): "I do not allow all the expense items which were required by the presence of two counsel."

This entire subject is at best an embarrassing one, because no lawyer enjoys the sensation of commenting upon the reasonable value of another's services.

One of the reasons for the selection of the Master in this case was his great experience in this field of the law, and the demonstrated integrity and sagacity of his mental processes. It is not to be thought that the Court has relied blindly upon what the Master says, for that is not the fact.

The result of analysis and reflection upon the subject may be thus stated:

Plaintiff was free to select its own counsel and to confide to them the presentation of this proceeding; it thereby incurred a financial obligation commensurate with their attainments and the nature of the services that they found it necessary to render. To transfer that obligation to the defendants would cast upon the latter a burden which in all probability would lie beyond their capacity to bear; therefore,

the present task is to arrive at a sum fairly to be charged against them in view of all the circumstances of the case, among which are those discussed on pages 18 and 19 of the report. It is concluded that the Master's award of $1,500 for services, and $934.-53 for expenses, is just and proper.

Defendants' objection 5 is directed only to the items of expense as not being in accord with the decision in the Stetson case, supra, but there is no disposition on the part of this Court to disagree with the Master, and the objection is overruled.

Defendants' objection 6 is to an alternative recommendation, whereby the allowance of counsel fees to plaintiff would have been increased as an offset to possible change in the excluded items asserted by the defendants and discussed above. Since there is only the matter of the deduction for Federal income taxes which has been changed, that recommendation of the Master need not be discussed, and the objection therefore falls.

Plaintiff's objections 5, 6 and 7 are directed to the failure of the Master to award the full sum requested representing legal services and disbursements, and what has been said sufficiently indicates the views of the Court to explain why these objections are overruled.

█ 5. *Exhibit J.* The remaining finding which is the subject of challenge has to do with Exhibit J. A box of ten spark plugs repaired and marketed by the defendants since the hearing before the Court, which resulted in the order of February 19, 1952, was received in evidence by the Master as an indication that the defendants had not mended their ways so far as real conformity to the order on mandate is concerned. These plugs, as the defendant Samuel Sanders testified, represented plugs which the defendants were selling as of the date of the hearing, namely, May 7, 1952. That conduct of the defendants was one of the "circumstances of the case" referred to on pages 18 and 19 of the report, and for that purpose they must be deemed to have been admissible. The Master's ruling in that connection is approved.

The foregoing is the subject of defendants' objection 7, which is overruled.

The result of the foregoing is that there must be awarded to the plaintiff, the following:

| | |
|---|---:|
| Profits, as computed | $13,482.51 |
| Counsel fees | 1,500.00 |
| Legal expenses | 934.53 |
| Total | $15,917.04 |

█ As to the award of interest, it seems that the language of the Stetson case, supra, 58 F.Supp. at page 596, applies directly to the conduct here under review, namely:

"I think here that defendant(s) deliberately took the chance and profited by it (meaning the chance of infringing the decree on mandate) and interest should be computed from the date of the first objectionable advertisement * * *."

The comparable date in this case is January 1, 1951, when the defendants' sales began to assume real proportions, and accordingly interest is awarded from that date.

The matter being before the Court on cross-objections to the report, pursuant to stipulation dated October 7, 1952, the disposition is as follows:

The defendants' objections, with the exception of objection 2, are overruled; objection 2 is sustained.

Plaintiff's objections are overruled; and

The report, except as modified, is confirmed.

There is, therefore, imposed upon the defendants a fine in the sum of $15,917.04, with interest from January 1, 1951, to be embodied in a judgment to be settled on notice, which may contain a reasonable provision as to the time within which such fine is to be paid; also the Court can pass upon a possible application for an allowance of counsel fees to plaintiff for services rendered since the filing of the Master's report; also the appropriate sum constituting an allowance to the Master.