272 F.2d 867
 123 U.S.P.Q. 574
 Bernard M. WOLFE and Frederick J. Dannenfelser, Individuals
and Co-partners Doing Business Under the Names and
Styles of 'Dutch Paint Company' and
'Manning-Mitchell Paint
Company,' Appellants,
v.
NATIONAL LEAD COMPANY, a Corporation, Appellee.
 No. 16157.
 United States Court of Appeals Ninth Circuit.
 Nov. 27, 1959.
 
 Joseph L. Alioto, Guido Saveri, San Francisco, Cal., for appellant.
 Crimmins, Kent, Bradley & Burns, Robert E. Burns, San Francisco, Cal., for appellee.
 Before CHAMBERS, HAMLIN and MERRILL, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 Appellants will hereinafter be designated in the singular as 'Wolfe.'
 
 
 2
 Wolfe takes this appeal from judgment of the District Court in the sum of $239,457.86, based upon an accounting of profits and damages as reported by the court following hearing. Wolfe contends that in several specific respects the accounting report gives recognition to accounting methods and considerations which are inappropriate under the facts of this case.
 
 
 3
 The accounting was ordered for the purpose of ascertaining the extent of profits realized by Wolfe through his use of paint products and in advertising of the words 'Dutch,' 'Dutch Paint' and 'Dutch Paint Company,' such use having been judicially determined to constitute a deliberate and fraudulent infringement of appellee's trademark 'Dutch Boy.' The history of the proceedings leading to the judgment below are set forth in the margin.[1]
 
 
 4
 The accounting report covered the entire period of infringement: from May 1, 1946, to January 15, 1956, and, save for the final computation, was based upon annual computations made at the end of each fiscal year (April 30). It showed that, for the years 1947, 1948, 1954, 1955 and 1956, losses rather than profits were realized from the sale of 'Dutch' products. For the remaining years, profits were shown totalling $178,657.86. Judgment for the full amount was rendered in favor of appellee.
 
 
 5
 Wolfe asserts error in the failure of the court to set off the losses against the profits.
 
 
 6
 It is clear, however that in the making of an accounting an infringer is not permitted such a setoff. Mr. Justice Cardozo, in the case of a patent infringement, Duplate Corporation v. Triplex Safety Glass Co., 1936,298 U.S. 448, 458, 56 S.Ct. 792, 796, 80 L.Ed. 1274, stated the principle as follows:
 
 
 7
 'The owner of the patent, in holding the infringers to an accounting, is not confined to all or nothing. There may be an acceptance of transactions resulting in a gain with a rejection of transactions resulting in a loss. Upon a statement of an account, a patentee is not looked upon as a 'quasi-partner of the infringers,' under a duty to contribute to the cost of the infringing business as a whole. McKee Glass Co. v. H. C. Fry Glass Co., 3 Cir., 248 F. 125, 128. He is the victim of a tort, free at his own election to adopt what will help and discard what will harm.'
 
 
 8
 See also National Carbon Co. v. Richards & Co., 2 Cir., 1936, 85 F.2d 490, 492; Coca Cola Co. v. Dixie Cola Laboratories, Inc., Md.1944, 57 F.Supp. 911, 912, 913; Adolphe Gottscho v. American Marketing Corporation, 1958, 26 N.J. 229, 139 A.2d 281, 67 A.L.R.2d 816. The principle applies in trademark cases. Coca Cola Co. v. Dixie Cola Laboratories, Inc., supra. See 3 Restatement, Torts, 747, Comment d (1938).
 
 
 9
 Wolfe contends that in several respects the District Court erred in fixing the limits of the accounting period and that a shorter period was called for under the facts.
 
 
 10
 First, it is asserted that the period should have commenced no earlier than May 1, 1949, since before that date the business had been carried on in corporate form by the predecessors of the present partnership. We need not consider whether error was committed in this respect. No prejudice could have resulted since no profit was charged to Wolfe during this period.
 
 
 11
 Wolfe next asserts that the accounting period should have been held to terminate at an earlier date than January 15, 1956.
 
 
 12
 On October 1, 1949, Wolfe retained counsel who advised him that he was not in infringement. He asserts that thereafter he acted in good faith and in reliance upon such advice and that an accounting is not proper during that period when infringement was innocent.
 
 
 13
 Further, on January 5, 1953, by judgment of the District Court (see footnote 1), it was held that Wolfe was not in infringement. Wolfe asserts that, until this judgment was reversed by this Court, he acted in good faith and in reliance upon the judgment of the District Court and that his infringement during this period must be recognized to have been innocent.
 
 
 14
 It was not innocent, however, in its inception. As has been judicially determined, it was a deliberate and fraudulent appropriation to himself of the good will of appellee. Throughout this period, Wolfe had full knowledge of the facts and of appellee's claim of infringement. Whether he believed himself to be within the law or not, he was knowingly and deliberately cashing in upon the good will of appellee. This is such an infringement as will justify an accounting of profits. Lawrence-Williams Co. v. Societe Enfants Gombault et Cie., 6 Cir., 1931, 52 F.2d 774. This course moreover continued after reversal by this Court and until halted by order of the District Court in response to our mandate. One may view with some skepticism the proposition that the conduct of Wolfe from time to time throughout this continuing and constant course of infringement assumed an aspect of innocence wholly free from the original fraudulent intent.
 
 
 15
 Under the facts of this case, there was no error in holding the accounting period to continue beyond the District Court judgment in favor of Wolfe. Champion Spark Plug v. Reich, D.C.Mo. 1943, 49 F.Supp. 603; and see Notaseme Hosiery Co. v. Straus, D.C.S.D.N.Y.1913, 209 F. 495, 496, affirmed, 2 Cir., 1914, 215 F. 361, reversed on other grounds, 1916, 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590.
 
 
 16
 The counterclaim of appellee was filed November 19, 1949, and had reference to matters occurring between 1946 and June, 1949. Wolfe contends that these dates limited the matters at issue and that these issues provide no basis for an accounting beyond June, 1949.
 
 
 17
 Where accounting is proper, the accounting period should, in our view, be regarded as co-extensive with the period of infringement (see Century Distilling Corporation v. Continental Distilling Corp., 3 Cir., 1953, 205 F.2d 140, 142, certiorari denied, 1953, 346 U.S. 900, 74 S.Ct. 226, 98 L.Ed. 400; Champion Spark Plug v. Reich, D.C.Mo.1943, 49 F.Supp. 903) and the infringer must bear the burden of establishing that the infringement has so changed in character as to justify a relief from accounting. See 2 Wigmore, Evidence, 395, 437 (3rd Ed., 1940); and cf. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1941, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381. There has been no such showing here. We see no good reason for relieving Wolfe from liability for that period during which he persisted in infringement in the face of the formal demands of appellee. An inference of continuing deliberate and fraudulent intent is clearly available.
 
 
 18
 Wolfe next challenges the manner in which the account and report of the District Court ascertained the administrative and manufacturing costs attributable to 'Dutch' products and thus determined the net profits for which Wolfe was liable. During the period in question, Wolfe was not selling 'Dutch' products alone. Much of his business had no relation to the infringed trademark. Unlabeled paint was sold, and paint was sold under labels other than 'Dutch.' It therefore became necessary to apportion costs between 'Dutch' and non-'Dutch' products. The records kept by Wolfe and made available to appellee did not contain data from which an accurate apportionment could be made. Appellee, in the District Court, therefore proposed the 'sales-ratio' method: applying to the joint expense the ratio of receipts from the sale of infringing goods to the total receipts. Application of this ratio showed 64% of costs to be attributable to 'Dutch' products. This method is recognized as proper where a more exact basis of apportionment is not available. National Folding-Box & Paper Co. v. Dayton Paper Novelty Co., C.C.Ohio, 1899, 95 F. 991; Duro Co. (of Ohio) v. Duro Co. (of New Jersey), 3 Cir., 1932, 56 F.2d 313, 315-316; Flat Slab Patents Co. v. Turner, 8 Cir., 1922, 285 F. 257, 277, certiorari denied 1923, 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215.
 
 
 19
 In the District Court, Wolfe opposed the application of this method as wholly inappropriate to the type of business operated by him. He testified that, on the whole, throughout the ten-year period he had lost money on 'Dutch' products; that 85% would be a fair figure at which to fix 'Dutch' administrative costs; that for the first four years 89% would be a fair figure for 'Dutch' manufacturing casts and that this figure would be higher for subequent years.
 
 
 20
 As a result of the testimony of Wolfe, the District Court refused to accept the sales-ratio method without qualification. At the same time, the court refused to accept the conclusions of Wolfe, finding that, while they were fundamentally sound in general principle, still in their application to the facts they were so far removed from accepted accounting principles as to 'present endless problems and require a multitude of adjustments.'
 
 
 21
 The court then struck a compromise. It accepted Wolfe's figure of 85%. To compensate for higher manufacturing costs, it then deducted 20% of the profits as computed by the 85% figure.
 
 
 22
 Wolfe contends that this manner of determining profits was clearly erroneous.
 
 
 23
 We must recognize as established law that the burden of proving costs is upon Wolfe. Section 35 of the Lanham Act (15 U.S.C.A. 1117) provides:
 
 
 24
 'In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.'
 
 
 25
 The question is whether Wolfe, by testimony and exhibit, has so clearly borne the burden as to demonstrate that the finding of the court was clearly erroneous. In our view, Wolfe's proof cannot be said to have met this test. It was limited to the years 1946-1949 and was based not upon records but upon recollection, estimate and approximation. In some respects it was demonstrably erroneous.[2] Record proof of certain profitable non-'Dutch' transactions, it is true, was made. These transactions, however, for the most part, occurred during periods when no profits were attributed to 'Dutch' products, and there was testimony that such transactions occurred less frequently as war surplus because less available. From an examination of the record, we cannot say that Wolfe's proof of costs was of such a degree of exactness as to render the conclusions of the court clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.
 
 
 26
 Wolfe asserts that from 1946 to 1949 a titanium pigment shortage existed and that any profits realized during this period were attributable to this shortage. He contends that it was error therefore to attribute profits during this period to the 'Dutch' label.
 
 
 27
 Upon this contention the burden is upon Wolfe to prove that sales were 'demonstrably not attributable' to the infringing mark. Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 206, 62 S.Ct. 1022. The District Court found that Wolfe had 'signally failed' to meet this burden. We agree.
 
 
 28
 Wolfe claims that, from 1946 to 1949, approximately one-third of the paint sold was unlabeled and that the figures on 'Dutch' sales should therefore be reduced by one-third. There is evidence that some 'Dutch' paint was sold unlabeled. There is no evidence, however, as to the amount or that the sales were invoiced as 'Dutch' sales. The contention must be rejected.
 
 
 29
 Wolfe further assigns as error the action of the District Court in disallowing certain deductions from profits claimed by Wolfe.
 
 
 30
 First, fees and costs paid to the attorneys for Wolfe in connection with this litigation. These are not proper deductions under the facts of this case. Duro Co. (of Ohio) v. Duro Co. (of New Jersey), 3 Cir., 1932, 56 F.2d 313; Champion Spark Plug Co. v. Sanders, D.C.E.D.N.Y.1952, 108 F.Supp. 674, affirmed, 2 Cir., 1953, 204 F.2d 125.
 
 
 31
 Second, income taxes paid during the period in question. In the absence of mitigating circumstances, which do not appear here, these are not proper deductions. L. P. Larson, Jr., Co. v. William Wrigley, Jr., Co., 1928,277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800; Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 1951, 191 F.2d 99, 106; Sheldon v. Metro-Goldwyn Pictures Corporation, 2 Cir., 1939, 106 F.2d 45, 53, affirmed 1940, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825; Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 1938, 95 F.2d 978, 985, certiorari dismissed on motion of petitioners, 1939, 306 U.S. 665, 59 S.Ct. 459, 83 L.Ed. 1061.
 
 
 32
 Third, compensation to Wolfe and his partners for services rendered to the business. This is not a proper deduction under the facts of this case. Callaghan v. Myers, 1888, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547; Duro Co. (of Ohio) v. Duro Co. (of New Jersey), 3 Cir., 1932, 56 F.2d 313, 315; Champion Spark Plug Co. v. Sanders, D.C.E.D.N.Y.1952, 108 F.Supp. 674, 678, affirmed, 2 Cir., 1953, 204 F.2d 125.
 
 
 33
 Finally Wolfe assigns as error the inclusion in the judgment of an allowance to appellee for counsel fees. In the light of the judicial determination that the infringement was deliberate and fraudulent, this allowance was proper. National Van Lines Co. v. Dean, 9 Cir., 1956, 237 F.2d 688, 694.
 
 
 34
 Affirmed.
 
 
 
 [1]
 October 1, 1949. The complaint in this action was filed by Wolfe, seeking a judicial declaration of his right to the use of the trademarks 'Dutch,' 'Dutch Paint' and 'Dutch Paint Company.'
 November 12, 1949. An answer and counterclaim were filed by appellee, asserting infringement of its trademark 'Duth Bay' and seeking an injunction against the continued use of his marks by Wolfe, an accounting and damages. January 5, 1953. Judgment was rendered by the District Court in favor of Wolfe, holding that his marks did not infringe the rights of appellee in its 'Dutch Boy' mark.
 May 17, 1955. The District Court judgment was reversed by this Court. National Lead Company v. Wolfe, 9 Cir., 223 F.2d 195. The matter was remanded 'with directions to dismiss (Wolfe's) complaint, to grant to (National Lead) an injunction as prayed for in its answer and counterclaim, and to proceed to take an accounting of (Wolfe's) profits, and to determine (National Lead's) damages as directed in this opinion.' at page 206. January 23, 1956. Judgment was entered by the District Court pursuant to mandate of this Court. That judgment, following the opinion of this Court, decreed in part: 'By their use of 'Dutch,' 'Dutch pant,' and 'Dutch Paint Company' on their paints and paint products and in their advertising, plaintiffs have wilfully and deliberately infringed defendant's trade-mark 'Dutch Boy,' have had the deliberate and intentional design to cause confusion and mistake and to deceive purchasers of paints and paint products, and have been guilty of fraudulent conduct and unfair competition in trade.' The judgment permanently enjoined further use of the infringing marks and directed that an accounting of Wolfe's profits and appellee's damages be had.
 October 29, 1957. Following hearing on the accounting, an order was made by the District Court, 156 F.Supp. 883, resolving disputes as to the proper method and applicable period of accounting, the measure of profits and allowable deductions.
 April 11, 1958. The accounting report of the District Court was filed together with its findings of fact and conclusions of law.
 April 15, 1958. Judgment was entered pursuant to the report, findings and conclusions against Wolfe and in favor of appellee in the sum of $239,457.86: $178,657.86 in profits realized by Wolfe from the sale of 'Dutch' products, $60,800.00 damages incurred by appellee for counsel fees.
 May 13, 1958. This appeal was taken by Wolfe.
 
 
 [2]
 E.g. Inclusion as cost items of salaries to appellants totalling $204,000.00 and legal fees, paid in connection with the prosecution of this action, of some $29,000.00