## JONES APPAREL GROUP, INC.

v.

### William STEINMAN.

Civ. A. No. 77–1832.

United States District Court,
E. D. Pennsylvania.

Jan. 12, 1979.

Judgment Modified March 9, 1979.

Manny D. Pokotilow, Philadelphia, Pa., for plaintiff.

Michael A. Shechtman, Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

Plaintiff Jones Apparel Group (Jones) sued defendant William Steinman for infringement of plaintiff's registered trademark "JONES NEW YORK." The complaint alleged that defendant sold items of clothing bearing the JONES NEW YORK label which were not made by plaintiff, and that such sales had been "willful and deliberate and with reckless disregard for the rights of the plaintiff." [1] Finding that Steinman's conduct infringed Jones' registered trademark, Judge Fogel, last spring, granted partial summary judgment in Jones' favor; [2] but he denied Jones' request for an injunction because Steinman had agreed, during the pendency of this action, not to use the trademark JONES NEW YORK on any goods not manufactured or sold by Jones. Since Jones has not renewed its request for an injunction, what remains to be considered is Jones' claim to the items of monetary relief specified in Section 35 of the Lanham Act (15 U.S.C. § 1117)—namely, damages to plaintiff; defendant's prof-

its; attorney's fees; and costs. An evidentiary hearing has shown that Jones is entitled to some, but not all, of the monetary relief sought.

## I.

The factual setting which defines, and limits, Jones' claim for monetary relief is as follows:

On January 3, 1977, defendant William Steinman [3] purchased 280 three-piece women's pantsuits bearing the label JONES NEW YORK. Steinman paid for the suits in cash, receiving a receipt which recorded the purchase price as $49.75 apiece. The receipt identified the seller as one George May, but did not give May's address or any other information about him; the parties to this litigation have been unable to locate May. Before purchasing these suits, Steinman had had no business dealings with May and no knowledge of his business reputation. Steinman bought the suits believing they were manufactured by Jones. This belief was based solely upon the labels bearing plaintiff's registered trademark—JONES NEW YORK—sewn into the suits. Steinman made no independent investigation as to the source of the suits.

Soon after purchasing them, Steinman sold 229 of the suits, all containing the JONES NEW YORK label, to Dress Barn, Inc., a retail shop in Stamford, Connecticut, for $59.75 per suit. Between January 20 and April 7, 1977, all but thirty-two of the suits were returned, with full credit, to Steinman.

On or before January 31, Sy Blank, a buyer for Dress Barn, advised Steinman that some doubt had arisen that the suits Steinman had sold to Dress Barn had actu-

---

1. The complaint was originally filed against Steinman and A & H Sales Co. A & H Sales Co. was dismissed by stipulation of counsel. A counterclaim by Joseph George, Inc., which traded as A & H Sales Co. was dismissed by Judge Fogel because Joseph George, Inc., was never a party to this litigation.

2. The undisputed facts upon which partial summary judgment was granted were that Steinman had sold three-piece pantsuits which bore

the label JONES NEW YORK but were not in fact manufactured or sold by Jones.

3. At all times relevant to this case, William Steinman owned and was the chief operating officer of Joseph George, Inc., which traded as A & H Sales Co. Acts done by Steinman while formally their agent are treated here as done by Steinman on his own account.

ally been manufactured by Jones. The record does not show whether the doubt expressed by Blank as to the authenticity of the garments was one of the factors leading Dress Barn to return to Steinman almost ninety percent of its purchase. Nor is it important, for the purposes of this case, to determine why Dress Barn acted as it did. But it is important to this case that Steinman was advised in January that the authenticity of the suits was in question, and, furthermore, that he thought the advice had enough substance to lead him to decide on his own to remove the JONES NEW YORK labels from the suits remaining in or subsequently returned to his own inventory. Thus, when, in the early spring of 1977, Steinman sold a number of the garments at retail in a shop of which he was the proprietor, the garments were unlabeled—and the retail price was only $30 per garment. However, Steinman did not in fact remove the labels from all of the garments he had in stock: On April 4, Steinman sold fifty of the suits to Walter Singer, proprietor of a suburban retail shop, for $39 per suit; and it is Singer's testimony that all those garments contained the JONES NEW YORK label. Steinman did not dispute this testimony. The short of the matter is that Steinman intended to remove all the labels but somehow failed to complete the task.

Steinman's failure in this regard was negligent—part of a pattern of relative indifference to the obligations he owed to plaintiff as holder of the JONES NEW YORK trademark. The doubt expressed by Blank to Steinman in January signaled to Steinman that the garments he was selling under the trademark might indeed be spurious. But he made no move to ask anyone connected with plaintiff whether the garments were indeed manufactured by it. Instead, he adopted the palliative of removing the labels bearing Jones' trademark; but he bungled the job, with the result that fifty infringing garments were sold to a retailer, presumably for resale to the public, more than two months after Steinman had learned that the labeled garments in his possession might be outlaws.

The record discloses no infringing sales apart from the thirty-two garments not returned by Dress Barn and the fifty garments sold to Singer. Nor does the record contain any evidence that the infringing sales damaged plaintiff in any way.

## II.

Section 35 of the Lanham Act provides as follows:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The categories of potential monetary relief will be considered seriatim:

1. *"defendant's profits"*

Having bought, at $49.75 per garment, 280 pantsuits bearing the JONES NEW YORK label, defendant Steinman thereafter engaged in two transactions infringing plaintiff's trademark. The first infringing

transaction was the sale to Dress Barn: of the many garments sold to Dress Barn, at $59.75 apiece, Dress Barn retained (presumably for sale at retail) thirty-two, on which defendant made a profit (sale price to Dress Barn less purchase price from May) of $10 per garment, for a total sum of $320. The second infringing transaction was the sale to Singer in April of fifty garments at $39 apiece—a loss of $10.75 per garment, for an aggregate loss of $537.50.

■■ If the loss on the Singer transaction is treated as a "cost or deduction" within the meaning of Section 35, it would erase the profit on the Dress Barn transaction; and plaintiff would recover nothing under the heading of "defendant's profits." But such a result would appear to contravene Section 35's postulate that a money judgment in a trademark infringement action is "subject to the principles of equity." [4] It would be inequitable to saddle plaintiff with defendant's loss on the Singer transaction, for the reason that defendant sold at a loss to Singer in order to unload his inventory after belatedly realizing that the garments he had bought from May were probably not authentic Jones pantsuits. It will be recalled that by April defendant had removed the Jones label from most of the suspect inventory; and at the time of the sale to Singer, he thought none of the fifty garments still carried plaintiff's name. Had defendant in fact removed the Jones' label from the garments sold to Singer, that transaction would not have infringed plaintiff's trademark and hence the loss incurred could not have been deducted from defendant's profit on the Dress Barn transaction. It would seem anomalous if defendant's inadvertent infringement—the sale to Singer of garments which, to defendant's later-expressed chagrin, still bore the JONES NEW YORK labels he thought he had removed—operated *pro tanto* to insulate defendant from liability. And since a plaintiff in a trademark action "is not looked upon as a 'quasi-partner of the infringer;'" [5] Jones should recover Steinman's $320 profit on the Dress Barn transaction without having to set off any part of Steinman's loss on the Singer transaction.

2. *"any damages sustained by the plaintiff"*

■ Jones has presented no proof of actual damages. Without such proof, no award can be made. *Caesar's World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269 (3d Cir. 1975); *Donsco, Inc. v. Casper Corporation,* 587 F.2d 602 (3d Cir. 1978).

---

**4.** The cases reveal that there is no hard and fast rule for determining which items of expense or loss are to be offset against defendant's sales or profits; in each case the trial court must determine which elements of cost or loss it is fair to allow defendant to offset. For example, in *Wolfe v. National Lead Co.,* 272 F.2d 867 (9th Cir. 1959), *cert. denied,* 363 U.S. 809, 80 S.Ct. 1235, 4 L.Ed.2d 1151 (1960), plaintiff was not required to offset losses on infringing transactions occurring in one accounting period against gains occurring in another, where there was no evidence to show any link between expenses in one period and sales in another. Where, however, profits were made by an infringer in one accounting period in part because of heavy advertising paid for in a prior accounting period, losses from the prior period were offset against the later profits. *Carter Products, Inc. v. Colgate-Palmolive Co.,* 214 F.Supp. 383, 406–07 (D.Md.1963) (trade secrets infringement). Similarly, in a case where the defendant was able to allocate overhead and operating expenses to its infringing sales, it was allowed to do so. *W. E. Bassett*

*Co. v. Revlon, Inc.,* 435 F.2d 656, 665 (2d Cir. 1970). But where there was no accurate way to allocate general expenses between sales of infringing and non-infringing goods, defendant was only allowed to deduct that percentage of his general expenses equal to the percentage of his sales which infringed the plaintiff's trademark. *Wolfe v. National Lead Co., supra.*

**5.** *Duplate Corp. v. Triplex Safety Glass Co.,* 298 U.S. 448, 458, 56 S.Ct. 792, 796, 80 L.Ed. 1274 (1936) (patent infringement; statutory approach has since been changed), quoted in *Wolfe v. National Lead Co.,* 272 F.2d at 870; see *Dickinson v. O. & W. Thum Co.,* 8 F.2d 570, 574–75 (6th Cir. 1925); *Carter Products, Inc. v. Colgate-Palmolive Co.,* 214 F.Supp. at 406. In particular, an infringer will be required to bear the costs to his own business of correcting his own wrongdoing. *W. E. Bassett Co. v. Revlon, Inc., supra* (cost of placing new labels over infringing trademark on items still in stock may not offset profits made on infringing sales).

**564**

3. *"the costs of the action"*

■ Since plaintiff prevailed before Judge Fogel and is also to recover a money judgment in this phase of the action, an award of costs in plaintiff's favor is appropriate.

4. *"reasonable attorney fees"*

Pursuant to a 1974 amendment, Section 35 of the Lanham Act provides for an award of "reasonable attorney fees" in "exceptional cases." The statute offers no definition of "exceptional." The pertinent part of the Report of the Senate Judiciary Committee, S.Rep. 93–1400, 1974 U.S.Code Cong. & Admin.News, pp. 7132, 7133, accompanying the amending legislation is to the following effect:

> Existing law since 1967 is that attorney fees are recoverable only in the presence of express statutory authority (*Fleischmann Distillery [Distilling] Corp. v. Maier Brewing Co.,* 386 U.S. 714 [87 S.Ct. 1404, 18 L.Ed.2d 475] (1967)). As a result, although the patent law and the copyright law provide for reasonable attorney fees, this remedy is not now available in the trademark area.

> The Department of Commerce believes and the Committee agrees that the remedy should be available in exceptional cases, i. e., in infringement cases where the acts of infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful." The attorney fee remedy should coexist with existing provision for treble damages and attorney fees should also be available to defendants in exceptional cases.

The House Judiciary Committee Report, H.Rep. 93–524, was in accord.

■ The record supports a characterization of defendant's conduct as negligent. It may even be said to be intentional, in the sense that defendant meant to buy and meant to sell. But the record does not compel a conclusion of bad faith intentionality—i. e., that defendant intended to pass off, as manufactured by plaintiff, garments which he knew when he sold them were not authentic. A strong showing would seem required to warrant a finding of intentionality properly characterizable as "malicious," "fraudulent," "deliberate," or "willful." Compare *Donsco, Inc. t/a John Wright, Inc. v. Casper Corporation* (E.D.Pa. No. 75–63, October 6, 1977), *rev'd on other grounds, Donsco, Inc. v. Casper Corporation,* 587 F.2d 602 (3d Cir. 1978), with *Amana Society v. Gemeinde Brau, Inc.,* 417 F.Supp. 310 (N.D.Iowa, 1976), *aff'd,* 557 F.2d 638 (8th Cir. 1977). Plaintiff has made no such showing here.

CONCLUSION

As provided in the accompanying Order, a judgment will enter in plaintiff's favor in the sum of $320 (defendant's profits) plus the costs of this action.