NOTASEME HOSIERY CO. v. STRAUS et al.

(District Court, S. D. New York. November 10, 1913.)

TRADE-MARKS AND TRADE-NAMES (§ 98*)—UNLAWFUL COMPETITION—FRAUDU-
LENT INTENT—PROFITS.

    Complainant and defendants were rival manufacturers, complainant putting out its product under the trade-mark label consisting of the word "Notaseme." Defendants innocently employed the same engraver to prepare a label for it which, when finished and accepted, consisted of the word "Irontex," but so arranged that the panels, contrasting colors, etc., indicated that the designer tried to make it so nearly like complainant's label as to deceive purchasers, and defendants, after notice, continued to use the label to complainant's damage. *Held*, that such use constituted a fraudulent intent to engage in unlawful competition and entitled complainant to recover profits after the expiration of a reasonable time after notice of the infringement.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*]

In Equity. Action by the Notaseme Hosiery Company against Isidor Straus and another to restrain alleged infringement of a trademark and to recover damages for unlawful competition. Decree for defendants was reversed and the cause remanded. 201 Fed. 99, 119 C. C. A. 134. On report of Special Master as to allowance of profits and damages to complainants, Master's finding modified and report confirmed.

  James H. Griffin, of New York City (Robert M. Barr and E. Hayward Fairbanks, both of Philadelphia, Pa., of counsel), for plaintiff.

  Wise & Seligsberg, of New York City (Edmond E. Wise, of New York City, of counsel), for defendants.

LACOMBE, Circuit Judge. [1] The Court of Appeals was clearly of the opinion that a case of unfair competition had been made out. The two names "Notaseme" and "Irontex" are wholly dissimilar, but mere inspection of the two labels with their panels and contrasting colors showed quite satisfactorily that the designer of the later label tried to make it so nearly like the earlier one that it would be likely to deceive purchasers. So close a copy of an earlier design is not often

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

seen; manifestly it was not accidently produced, it was devised with some intelligent purpose, and there is no evidence which would warrant the conclusion that such purpose was other than that which the Court of Appeals has found, viz., an attempt to compete unfairly with the owner of the earlier label.

This it not a case of the use of a man's own name, which use may incidentally lead persons to suppose that his wares are those they have always associated with another dealer having the same name. There has been a carefully planned and deliberate attempt to simulate successfully the dress or earmark of another's goods.

That constitutes a fraudulent intent, and, when there is such a plain intent, the authorities, as I understand them, allow complainant to recover profits as he would in an ordinary registered trade-mark case.

It does appear, however, from the record, that defendants were not concerned in the original concoction of the label. They sent to a designer in Philadelphia, who, as it happened, had been the one who designed complainant's label, to get up a label for them. When they received his design and commenced to sell their own goods under it, they had not seen complainant's label. During the period when they sold their goods in ignorance of the fact that the label they were using designedly simulated that of complainant, it cannot be held that they had any fraudulent or unfair intent; and intent is essential in case of unfair competition. By the latter part of 1909, however, they were advised of the situation and learned of complainant's label. The fact that thereafter, instead of discontinuing the use of the simulating label, they continued to sell their own goods under it, sufficiently shows that at that time they deliberately, intelligently, and knowingly decided to enter into unfair competition with the complainant. For the consequences of that decision, they should respond, allowing a brief period for them to advise themselves as to the facts and to change the design of their own label. January 1, 1910, may be taken as the date from which they should account for profits. So much of the profits as accrued prior to that date should be disallowed.

I see no reason why the profits for the period between original decision in District Court and its reversal should also be eliminated. Appeal was promptly taken, and defendants took their chance of the result.

With the modification above indicated of the master's finding as to the amount of the profits, his report is confirmed.