Bernard M. **WOLFE** and Frederick J. **Dannenfelser**, individuals and copartners, doing business under the names and styles "Dutch Paint Company" and "Manning-Mitchell Paint Company", Plaintiffs,

v.

NATIONAL LEAD COMPANY, a corporation, Defendant.

No. 29177.

United States District Court
N. D. California, S. D.

Oct. 30, 1957.

Joseph L. Alioto, San Francisco, Cal., for plaintiff Wolfe.

Vladimir Vucinich, San Francisco, Cal., for plaintiff Dannenfelser.

Robert E. Burns, San Francisco, Cal. (James D. Ewing, Milton Hand'er and John B. Henrich, New York City, of counsel), for defendant.

EDWARD P. MURPHY, District Judge.

The Court of Appeals for the Ninth Circuit found plaintiffs guilty of trademark infringement and unfair competition, and ordered an accounting of plaintiffs' profits and a determination of defendant's damages. National Lead Company v. Wolfe, 1955, 223 F.2d 195. In accordance with these directions, a hearing has been held and briefs have been filed. I have carefully considered all relevant evidence and the briefs and memoranda submitted by counsel. My findings and conclusions are set forth below.

The Proper Method of Accounting

The most fundamental issue concerns the proper accounting method to use in computing the profits attributable to Dutch paint. Defendant in the Keenan Report has followed the sales ratio method, whereby the ratio of Dutch paint sales to total sales has been applied to total costs in determining the amount of costs attributable to Dutch paint. Plaintiffs in the Wolfe Study have allocated a greater proportion of costs to Dutch paint than results with use of the sales ratio method.

Defendant argues that the sales ratio method is properly used because plaintiffs' books do not permit an accurate allocation of costs between Dutch and non-Dutch items. Plaintiffs admit that their books have not been kept in such a way as to permit allocation of costs, but main-

tain that through testimony and documentary evidence they have sustained their burden of proof as to the proportion of costs properly attributable to Dutch paint.

■ Once the injured party has sustained his burden of proving total sales of the infringing article, the infringer has the burden of proving all costs. Lanham Trade-Mark Act, Sec. 35, 60 Stat. 439 (1946), 15 U.S.C.A. § 1117 (1952); Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381. And it is the general rule that where the infringer's books do not allocate costs between the infringing article and other goods, nor permit such allocation, the sales ratio method is properly used. Duro Co. of Ohio v. Duro Co. of New Jersey, 3 Cir., 1932, 56 F.2d 313, 315–316.

■ But in an accounting for profits the court sits as a court of equity; the above rule, as all rules in this area, is nothing more than a means of arriving at a just result. As stated by Judge Learned Hand in Page Machine Co. v. Dow, Jones & Co., D.C.S.D.N.Y.1916, 238 F. 369, 376:

"It will be urged, perhaps, that consistency might require me to go further and attribute to the invention only so much of these profits as the cost of the patented parts bore to the cost of the whole machine. I am quite aware that the method of dividing the profits of the ticker service as a whole by the division of the cost is itself artificial. The fact is that the relative contribution of two or more essential factors to a common result cannot be ascertained quantitatively. But we must adopt some working rule to avoid instances of grotesque injustice * * *. *If, however, we are to apply it with ruthless logic, our second situation will be as bad as our first,* * * *. *I think that we must show that the law can be more plastic even at the expense of formal consistency."* (Emphasis added.)

It is clear from the testimony of Wolfe and Dannenfelser, as well as documentary evidence, that the major portion of both administrative and selling expenses and manufacturing expenses is attributable to Dutch paint. Under these circumstances, to follow the sales ratio method would be to subordinate the end to its means. Plaintiffs' evidence will of course not lead to a completely accurate determination of profits. But the accuracy is no greater where the sales ratio method is used; and in fact complete accuracy is neither required nor expected in an accounting. Page Machine Co. v. Dow, Jones & Co., supra at page 376; see Flat Slab Patents Co. v. Turner, 8 Cir., 1922, 285 F. 257, 278–279. All that is necessary to preserve defendant's rights is that it does not receive less than the actual profits from Dutch paint, and this protection will be afforded by the purposeful use of conservative estimates. Cf. Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 1941, 116 F.2d 708, 714. Accordingly, the sales ratio method shall not be used in computing the profits attributable to Dutch paint.

■■ However, I am not restricted to a choice between the Keenan Report and the Wolfe Study. As I have indicated, the latter proceeds on correct premises. But its application of these premises is so far removed from accepted accounting principles that its use as a basis of this accounting would present endless problems and require a multitude of adjustments.

"[W]ithout waiving its rights * * *," defendant has suggested certain modifications of the Keenan Report. The first is to attribute 85% of plaintiffs' administrative and selling expenses to Dutch paint, in lieu of approximately 64% so attributed where the sales ratio method is used. The other is to provide for the greater proportion of manufacturing expenses attributable to Dutch paint by deducting 20% of the profits computed by use of the above 85% figure. From an accounting standpoint the Keenan Report is sound. With the two modifications suggested by defendant, it will furnish

an excellent framework for this accounting and require a minimum of adjustments.

Therefore, the basis of this accounting shall be the Keenan Report as so modified.

### The Applicable Period

*A. Commencement*

■ The issue presented here is whether plaintiffs are liable for the infringement and unfair competition conducted by their predecessor corporations. Both sides have presented elaborate arguments, many of them far afield. Counsel's difficulty in arguing this point reflects the difficulty experienced by courts in formulating any precise rules, and it would serve no useful purpose to go into the arguments here. The law on this subject comes down to the simple proposition that the corporate entity may be disregarded where justice so requires.

■ By their own admission, plaintiffs were the dominant personalities in the predecessor corporations. Upon dissolution of the corporations the same business, or businesses, continued uninterrupted and with essentially the same organizational makeup as before. In view of these facts, it is just that the corporate entities be disregarded. Plaintiffs are liable for the wrongful acts of the corporations, and must account for the corporations' profits on Dutch paint.

*B. Termination*

■ Plaintiffs have suggested three alternative dates of termination: (1) June, 1949; (2) date of filing the counterclaim; (3) date of this court's decree in their favor, or the earlier date on which they learned that the court had decided to enter a decree in their favor. Defendant would have the accounting cover the entire period during which the "Dutch" mark was in use.

1. *June, 1949.* Plaintiffs advance this termination date on two grounds. The first is that the Court of Appeals ordered an accounting because it found fraudulent intent, the evidence before the Court of Appeals did not extend beyond June of 1949, and it cannot be inferred that such fraudulent intent continued after that date. Plaintiffs further state that to make such an inference would be violative of due process. The second ground is that plaintiffs changed their advertising policy in June of 1949, presumably to advertising of a non-deceptive nature.

Defendant's answer to both arguments is that in fact the evidence before the Court of Appeals contained advertisements appearing subsequent to June of 1949 and it was these very advertisements which the Court of Appeals found objectionable. Defendant makes the further argument that a trademark infringement was found, such infringement continued as long as use of the infringing mark continued, and an accounting follows as a matter of course in all cases of trademark infringement.

Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 131, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 makes it clear that the Mishawaka case, supra, is not to be interpreted as requiring an accounting in all cases of trademark infringement. Neither is an accounting required in all cases of unfair competition. Straus v. Notaseme Hosiery Co., 1916, 240 U.S. 179, 181–183, 36 S.Ct. 288, 60 L.Ed. 590. However, both Champion Spark Plug and Notaseme Hosiery involved situations "where an injunction [satisfied] the equities of the case." Not only was there no showing of wilfulness in these cases; there was not even a showing of substantial damage or profits accruing from the infringement. Here the showing is very much to the contrary.

■ There is the additional factor in this case that it would be impossible to ascertain the portion of Dutch paint sales due to deceptive advertising and that portion due to the allegedly non-deceptive advertising. Obviously the time of sale would not be controlling; who is to say what factors, what particular advertisements, motivated a given purchaser of Dutch paint? Cf. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., supra, 316 U.S. at page 207, 62 S.Ct. 1022.

2. *Date of filing the counterclaim.* Plaintiffs do not make clear the significance of this date. They do seem to claim, however, that their good faith is evidenced by the fact that they initiated this action and by their consultation of an attorney who advised them of their right to use the "Dutch" mark.

At the time plaintiffs brought their action for a declaratory judgment they certainly should have known, from prior contacts with the defendant's representatives,[1] that the defendant would either bring an action of its own or counterclaim in any action brought by plaintiffs. Therefore, plaintiffs cannot claim good faith from the mere fact that they instituted this action.

Although there are cases which hold that reliance on advice of an attorney constitutes good faith, an analysis of these cases reveals that they involved situations where the infringer was otherwise completely innocent. Such are not the facts in this case.

3. *The District Court decree.* Whether we take the actual date of this court's decree or the earlier date on which plaintiffs learned of the court's intention to rule in their favor, plaintiffs' arguments are the same: a judgment rendered in a lower court protects the parties acting thereunder until reversal; the Court of Appeals ordered an accounting on the basis of wrongful intent and there could be no wrongful intent when plaintiffs were acting pursuant to the District Court decree. Defendant's arguments are: plaintiffs knew defendant was appealing, so they took their chances on reversal and operated at their peril; plaintiffs cannot claim good faith for they were aware that deception was being caused; the Court of Appeals placed no time limitation on the accounting.

The general rule is that a lower court decree which is reversed does not protect parties acting thereunder prior to reversal. Champion Spark Plug Co. v. Reich, D.C.W.D.Mo.1943, 49 F. Supp. 903, 904; Notaseme Hosiery Co. v. Straus, D.C.S.D.N.Y.1913, 209 F. 495, 496, affirmed 2 Cir., 1914, 215 F. 361, reversed on other grounds 1916, 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590. In the absence of any contrary indication, it must be assumed that in ordering this accounting the Court of Appeals intended to follow the general rule.

An additional answer to all of plaintiffs' arguments for an early termination date is that the right to an accounting is not dependent on the infringer's wrongful intent; the purpose of the accounting is simply to give the profits to the rightful owner whose mark or name made the profits possible. Lawrence-Williams Co. v. Societe Enfants Gombault, 6 Cir., 1931, 52 F.2d 774, 778; see also Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 1916, 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629.

For the foregoing reasons, this accounting shall cover the entire period during which plaintiffs and their predecessor corporations used the Dutch mark.

### The Proper Measure of Profits

Given the ten year period as determined above, plaintiffs would measure profits by taking the entire ten years as a single accounting period, offsetting the losses of poor years against the profits of successful years. Defendant contends that profits must be measured on a yearly basis, disregarding the years in which Dutch paint showed a loss and counting only the profitable years.

There is no need here for discussion. It is well settled that the injured party is entitled to treat each year as a separate period of infringement and may disregard unprofitable years. Coca-Cola Co. v. Dixi-Cola Laboratories, Inc., D.C.D.Md.1944, 57 F.Supp. 911, 912 and cases there cited.

### Sellers' Market

Plaintiffs have attempted to prove that sales of Dutch paint for the years 1946–1949 were due not to the "Dutch" label but to the titanium pigment shortage and the ready mixed paint shortage.

[1] See National Lead Company v. Wolfe, supra 223 F.2d at pages 202–203.

Defendant has objected to this attempted proof on the ground that to consider the question now is to reopen issues already decided by the Court of Appeals. Defendant also argues that where the infringing mark substantially contributes to sales, the injured party is entitled to the entire profits.

Defendant's position is not well taken. Although apportionment is usually not allowed, the reason is that in most cases apportionment is impossible. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., supra 240 U.S. at pages 261–262, 36 S.Ct. at pages 272–273, quoting from Graham v. Plate, 1871, 40 Cal. 593, 598. The infringer is entitled to prove, if he can, sales "demonstrably not attributable" to use of the infringing mark. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., supra 316 U.S. at page 206, 62 S.Ct. 1022.

But while plaintiffs were entitled to present their evidence on this point, and while we may accept plaintiffs' statement of the applicable burden of proof, they have signally failed to prove that any sales of Dutch paint were due to the titanium pigment shortage or ready mixed paint shortage rather than to the "Dutch" label.

### Unlabeled Paint

There has been considerable testimony on the subject of Dutch paint sold in unlabeled cans during the years 1946–1949. Plaintiffs contend that the Keenan Report includes these sales in its figures for Dutch paint sales. The theory is that sales of unlabeled paint were invoiced as sales of Dutch paint, and accountants going through the invoices would naturally classify these as sales of Dutch paint. It is further suggested that where an invoice listed one Dutch item and left the other items undesignated, the accountants would classify everything on the invoice as Dutch.

Even if we ignore the question of confusion at the dealer level,[2] plaintiffs still have failed to sustain their claim. Although I am satisfied from plaintiffs' testimony that some Dutch paint was sold unlabeled, there is no evidence as to the amount so sold. Next, with the exception of certain sales to Murphy War Surplus, there is no evidence that these sales were invoiced as sales of Dutch paint. Finally, as the figures in the Keenan Report for the years in question were taken from the Haskins & Sells Report, it was incumbent on plaintiffs to prove that the Haskins & Sells accountants classified as Dutch all items so classified on the invoices. And as to this last matter there is no substantial evidence.

Similarly, there is no evidence to support plaintiffs' claim that undesignated sales appearing on the same invoice with a sale designated as Dutch would be classified as Dutch by the accountants.

In view of plaintiffs' failure of proof, it must be concluded that the Dutch sales figures appearing in the Keenan Report do not include sales of unlabeled paint.

### Disputed Deductions

1. *Plaintiffs' legal fees.* Plaintiffs seek to deduct from Dutch profits the legal fees incurred in connection with this action. The reported cases uniformly refuse to allow the infringer's legal fees as a deduction in arriving at profits, and I see no reason here to deviate from the general rule. Plaintiffs' legal fees shall not be allowed as a deduction.

2. *Corporate income and franchise taxes.* The Supreme Court in 1928 established the rule that a deliberate infringer may not deduct corporate income taxes in arriving at profits. L. P. Larson, Jr. Co. v. Wm. Wrigley, Jr. Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800. Ours is a case of deliberate infringement and there is no valid basis on which the Larson case may be distinguished. Accordingly, corporate income taxes will not be allowed as a deduction.

However, there is no reason to apply the Larson doctrine to state fran-

---

2. See National Lead Co. v. Wolfe, 223 F. 2d supra at page 201.

chise taxes. The only acceptable justification for the doctrine is that the injured party will have to pay income taxes on the profits when they are received; by no legal sophistry can this reasoning be extended to corporate franchise taxes. Plaintiffs shall be allowed this deduction.

■ 3. *Individual income taxes.* Plaintiffs contend that they should be allowed to deduct their personal income taxes paid during the partnership period. I cannot agree. If corporate income taxes cannot be deducted, a fortiori personal income taxes are not deductible. The deduction is denied.

■ 4. *Compensation.* Defendant has excluded all corporate officers' salaries from the Keenan Report in computing the profits attributable to Dutch paint. Plaintiffs in the Wolfe Study have deducted $1,000 a month each as "reasonable" salaries to themselves during both the corporate salaries paid to Mueller and In addition, the Wolfe Study deducts all corporate period and partnership period. Brez and some additional compensation to Brez during the brief period in which he was a partner.

It is clear that the corporate salaries paid to Brez and Mueller are proper deductions. Although both were officers and stockholders of the corporations, they took little if any part in policy making. The salaries paid to each of them during the corporate period amount to approximately $800 a month, which is not unreasonable for the duties they performed. Accordingly, their corporate salaries shall be allowed as a deduction.

■ The corporate salaries paid to plaintiffs cannot be disposed of as readily. Defendant argues that even corporate salaries may not be deducted where paid to the dominant personalities primarily responsible for the corporation's infringing activities. There are ample authorities to support defendant's position. But there are also ample authorities on the other side. Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 116 F.2d supra, at page 713, and cases there

cited. The latter, I think, represent the more logical view. Provided the salaries are reasonable and the recipients are in fact doing the work for which they are paid, corporate salaries should be allowed regardless of whether they were paid to the dominant personalities of the corporation. The dominant personalities are not thereby "allowed to profit from their wrongs." Their profit comes not from salaries—presumably they would be drawing salaries elsewhere if not engaged in the infringing business—but from the return on their investment, whether it take the form of dividends, liquidation of assets or sale of their capital stock.

■ Defendant also relies on the fact that the corporations here were close corporations. Provided the close corporation is not a sham or a fraud on creditors, there is no valid reason to treat it differently than any other corporation. See Clair v. Kastar, Inc., D. C.S.D.N.Y.1946, 70 F.Supp. 484, 487–488.

■ The corporate salaries actually drawn by plaintiffs average quite a bit more than the $1,000 a month allocated in the Wolfe Study. Considering the duties performed by plaintiffs and the nature and size of the corporations, $1,000 a month appears to be a reasonable salary for each of the plaintiffs. This amount shall be allowed as a deduction during the corporate period.

■ Plaintiffs contend that this same $1,000 a month should be deducted as reasonable compensation during the partnership period. Regardless of whether these amounts, or any amounts, appeared on the partnership books as "salaries," it is settled law that no distinction may be made between partnership earnings and partnership salaries. Callaghan v. Myers, 1888, 128 U.S. 617, 663–664, 9 S.Ct. 177, 32 L.Ed. 547; Champion Spark Plug Co. v. Sanders, D.C.E.D.N.Y.1952, 108 F.Supp. 674, 678–679. There shall be no deduction for compensation to the plaintiffs or Brez during the partnership period.

### Defendant's Legal Fees

Defendant contends that it should be allowed as damages reasonable attorneys' fees incurred in connection with this action. Plaintiffs do not argue the reasonableness of the amount claimed by defendant—it appears to be less than that actually expended—but argue that as a general rule attorneys' fees are not allowed in this type of action. Plaintiffs' statement of the general rule is correct. However, in the recent case of National Van Lines v. Dean, 1956, 237 F.2d 688, 694, the Ninth Circuit in an action based on trademark infringement and unfair competition allowed the injured party attorneys' fees on the basis of essentially the same wilfulness it found here:

"Since we have found appellee's acts to have been willful and calculated to trade upon appellant's good will, the latter is entitled to recover its actual and reasonable attorney's fees incurred in this litigation."

In view of the above language, the attorneys' fees claimed by defendant shall be allowed as damages.

Plaintiffs advance the rather novel theory that if defendant is allowed legal fees only a pro-rata amount should be allocated to this action. The basis of this theory and of the apportionment is that as a result of defendant's legal efforts in this action—information secured on discovery as well as the holding of the Court of Appeals—defendant has been able to stop use of the name "Dutch" by numerous other parties. Although I do not feel bound by the lack of precedent for plaintiffs' theory, any rule allowing apportionment would lead to endless speculation and provide fertile ground for circumventing awards of attorneys' fees. Plaintiffs' request for apportionment of defendant's attorneys' fees is denied.

### Inter-Company Sales

Plaintiffs have included inter-company sales in the Wolfe Study. Defendant has eliminated inter-company sales from "Gross Sales" in the Keenan Report, and has made a corresponding reduction in "Purchases". Inasmuch as the figure for "Cost of Goods Sold" will be affected by the "Purchases" figure, this question still has some significance.

Plaintiffs' argument is that the selling company purchased Dutch paint from the manufacturing company in approximately the same proportion as other paints and therefore failure to eliminate inter-company sales does not affect the final result. But accepting the uncontradicted statement of defendant's counsel that "inter-company sales were never included in the 'Dutch' sales figures appearing in [the Keenan Report]", inter-company sales were correctly eliminated from "Gross Sales" and this in turn requires a corresponding reduction in "Purchases." Defendant's treatment of inter-company sales in the corrected Keenan Report is accepted.

Let the defendant submit a proposed accounting report and order consistent with the above findings and conclusions. It Is So Ordered.